Edmund COHEN

v.

UNIROYAL, INC. and Haskins & Sells.

Civ. A. No. 76–2989.

United States District Court,
E. D. Pennsylvania.

Aug. 22, 1977.

688

Sterling H. Schoen, Jr., Richard D. Greenfield, Bala Cynwyd, Pa., for plaintiff.

Henry W. Sawyer, III, Drinker, Biddle & Reath, Philadelphia, Pa., for defendants.

Alan J. Davis, Philadelphia, Pa., for Haskins & Sells.

## OPINION AND ORDER

A. LEON HIGGINBOTHAM, District Judge.

Plaintiff Edmund Cohen, a present shareholder of Universal, Inc., has brought suit against Uniroyal and Haskins & Sells, certified public accountants and Uniroyal's auditors, alleging that defendants have violated Section 10(b) and Rule 10b–5 of the 1934 Securities and Exchange Act.[1] Plaintiff has moved pursuant to Fed.R.Civ.P. 23 for certification as a class of " . . . all who purchased Uniroyal securities who sustained loss between December 1, 1972 and November 15, 1975, with the exception of defendants named in the Complaint." [Plaintiffs' Motion for Class Determination, p. 6.] Defendants oppose such certification on the grounds that, with the exception of the required showing of numerosity, plaintiff has not satisfied the requirements of Rule 23. For the reasons stated herein, this court will certify the class.

When this action began, Mr. Cohen was the owner of 300 shares of Uniroyal's common stock. The first purchase made in December, 1972, was for 100 shares at $15⅞ per share. Approximately one year later, in January, 1974, plaintiff purchased another 100 shares for $8¾ per share. The remaining 100 shares were purchased in October, 1975, for $9⅛ per share. [Cohen's Deposition, pp. 11, 17, 21]. Plaintiff seeks to represent all shareholders who purchased Uniroyal securities between December 1, 1972 and November 15, 1975, two weeks after Mr. Cohen's last purchase, because plaintiff alleges that it was on November 15, 1975 that many of the material facts which form the gravamen of this complaint were disclosed to the public for the first time in an article about Uniroyal which appeared in *Forbes Magazine*. [Plaintiff's Reply Brief Exhibit A].

In his complaint plaintiff has asserted that during the class period defendants (through employees and agents) engaged in acts, transactions, practices and courses of business which operated as a fraud and

1. 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b–5.

deceit upon plaintiff and other class members. It is further alleged that defendants made various misrepresentations of material facts and failed to disclose other material facts in several documents, including Uniroyal's annual reports for the years 1971 to 1974 which were distributed to the shareholders and filed with the Securities and Exchange Commission. Defendants' actions are alleged to violate § 10(b) and Rule 10b–5 which makes unlawful the use of manipulative and deceptive devices in connection with the purchase or sale of any security.

Plaintiff asserts that the 1971 through 1974 Annual Reports failed to disclose the following:

1. that Uniroyal had suffered sustained foreign exchange losses [Complaint ¶ 14(a)];

2. that large capital expenditures were needed in order for the polyvinyl chloride manufacturing process in the Painesville, Ohio plant to comply with existing and proposed federal regulations [Complaint ¶ 14(d)];

3. that excess capacity and product unprofitability necessitated the closing of production facilities, at an estimated loss of $7.3 million to Uniroyal [Complaint ¶ 14(e)];

4. that Uniroyal's investment in PASA, an Argentine affiliate was unprofitable and would be written off as a loss, although Uniroyal was obligated to honor a $5.4 million debt [Complaint ¶ 14(f)];

5. that the company's unfunded pensions obligations amounted to $395,-000,000 as of January 2, 1972 [Complaint ¶ 14–(b)];

6. that Uniroyal's cash resources were inadequate to maintain its quarterly dividends at previously established levels [Complaint ¶ 14(p)];

7. that Uniroyal's pension and profit expenses were disproportionately higher than those generally prevailing in the tire and rubber industry [Complaint ¶ 14(q)];

8. the extent of Uniroyal's exposure to claims arising out of illness or death of employees as a result of exposure to strene-butadiene rubber and polyvinyl chloride resin [Complaint, ¶ 14(c)];

9. the extent of Uniroyal's liability pursuant to litigation alleging violation of the 1964 Civil Rights Act [Complaint, ¶ 14(h), (m)];

10. the extent of Uniroyal's liability pursuant to the entry of a partial summary judgment in favor of plaintiff in *Chrapliwy v. Uniroyal*, 71 F.R.D. 461 (U.S.D.C., N.D.Indiana) (entered July 5, 1973), a class action in which plaintiffs alleged discriminatory actions by Uniroyal in an Indiana plant [Complaint, ¶ 14(u), (j), (g), (*l*)];

11. that Chrapliwy had brought suit against the Secretary of Labor to force the government to conduct a compliance review of Uniroyal and its employment practices, *Chrapliwy v. Dunlop*, Civil Action No. 75–1705 (D.C.D.C.), and that as a result of that suit and other federal actions Uniroyal could be found ineligible to hold federal government contracts which amounted to $46.9 million in the year ending June 30, 1976. [Complaint, ¶ 14(n), (*o*)].

It is plaintiff's contention that defendants' misrepresentations caused plaintiff and other class members to purchase securities for excessive consideration during the class period.

■ For this suit to be certified as a class action, plaintiff has the burden of showing that all four requirements of Rule 23(a) and at least one of the subsections of Rule 23(b) have been satisfied. *Boston Pneumatics, Inc. v. Ingersoll-Rand*, 65 F.R.D. 61, 63 (E.D.Pa.1974); *B & B Investment Club v. Kleinert's Inc.*, 62 F.R.D. 140, 145 (E.D.Pa. 1974); *Philadelphia Electric Co. v. Anaconda American Brass*, 43 F.R.D. 452, 457 (E.D. Pa.1968). Rule 23(a) provides that a class may be certified:

only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class and, (4) the representative parties will fairly and adequately protect the interests of the class.

■ The numerosity requirement has been met. Plaintiff asserts that during the alleged class period approximately 15,000,000 common shares were traded; as of December 28, 1975, more than 75,000 were listed as holders of record of Uniroyal securities. [Plaintiff's Motion for Class Certification, page 6.] Moreover, defendants have not challenged plaintiff's assertions as to numerosity.

■ Defendants have vigorously argued that plaintiff has been unable to meet his burden with respect to the second requirement of Rule 23(a), namely the existence of common questions of law or fact. It is defendants' contention that plaintiff's allegation of a conspiracy suggested by the existence of "a common core of questions" is an insufficient justification for the certification of a class comprised of all who either bought and still hold Uniroyal securities, or those who bought and held Uniroyal securities at some time during the approximately 35 month class period. It is their view that because the alleged misrepresentations appear in several different documents and because each document pertains to a different time period, plaintiff's class does not present common issues of law and fact.

However, after viewing plaintiff's allegations in light of the elements of a 10b–5 action, I conclude that the commonality requirement has been satisfied as plaintiff has shown the existence of a "common nucleus of operative facts." *Entin v. Barg*, 60 F.R.D. 108, 113 (E.D.Pa.1974). *See also Green v. Wolf Corp.*, 406 F.2d 291 (2d Cir. 1968); *In re U. S. Financial Securities Litigation*, 64 F.R.D. 443 (S.D.Cal.1974). Rule 10b–5(a) and (c) makes it unlawful "to employ any device, scheme or artifice to de-

fraud", or "to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person." Thus, under the very language of Rule 10b–5 the relevant issue here is the existence of a broad course of fraudulent conduct. *In re U. S. Financial Securities Litigation*, 64 F.R.D. at 448.

Such a course of conduct has clearly been alleged in the instant complaint:

> [d]efendants, their employees and agents engaged in acts and conduct which they combined, conspired and agreed to do as aforesaid. Furthermore, the officers, directors and agents of Uniroyal and Auditor had actual knowledge or notice or willfully disregarded facts indicating that the documents referred to herein were materially false and misleading and a fraud upon plaintiff and the class. [Complaint ¶ 15]

The core of the complaint is that those who purchased Uniroyal securities during the class period paid a price which did not correspond to the actual value because of the manipulative devices employed by defendants to conceal foreign exchange losses, unprofitable product lines, unprofitable investments, major capital expenditures, higher production costs than competitors and legal liabilities. Therefore, two issues emerge which are common to the entire class:

(1) whether Uniroyal's financial condition deteriorated during the class period; and

(2) whether defendants, with intent to deceive, deluded the investing public by not disclosing the corporation's true condition in order to inflate the price of the securities.

■ Defendants contend, however, that there can be no commonality where the transactions, and the corresponding duty to disclose them to shareholders, arose at different times during the class period, particularly where the transactions are not interrelated. *Cf. In re Equity Funding Corp. of America Securities Litigation*, 416 F.Supp. 161 (C.D.Cal.1976). Obviously, the

underlying facts fluctuate over the class period and vary as to individual claimants. This does not defeat a class action for Rule 23(a)(2) requires a showing of common questions of law *or* fact; it does not require identity of both facts and law.

The class is united as to whether the alleged misrepresentations constituted violations of Section 10(b) and Rule 10b–5; thus, there is a common question of law. As the Court of Appeals for the Ninth Circuit stated in *Blackie v. Barrack*, 524 F.2d 891, at 902, 903 (9th Cir. 1975), quoting *Harris v. Palm Springs Alpine Estates*, 329 F.2d 909, 914 (9th Cir. 1964):

> [S]ince the complaint alleges a common course of conduct over the entire period directed against all investors, generally relied upon, and violating common statutory provisions, it sufficiently appears that the questions common to all investors will be relatively substantial.

Defendants, relying on the rationale of cases such as *Feldman v. Lifton*, 64 F.R.D. 539 (S.D.N.Y.1974), argue that the common question requirement would be satisfied only if all purchasers are injured by the same misrepresentation. Yet, such a view is inconsistent with the purpose of Rule 23, as explained by comments of the Advisory Committee on the Rule: "a fraud perpetrated on numerous persons by means of similar representations may be an appealing situation for a class action . . ." Advisory Committee on Rule 23, Proposed Amendments to the Rules of Civil Procedure, 39 F.R.D. 69, 103 (1966).

■ Moreover, the common question test is clearly satisfied when a series of annual reports and other corporate financial statements uniformly misrepresent or fail to disclose certain items. The reasoning of the Court in *Fisher v. Kletz*, 41 F.R.D. 377, 381 (S.D.N.Y.1966) is particularly applicable to the instant litigation:

> Like standing dominoes, . . . , one misrepresentation in a financial statement can cause subsequent statements to fall into inaccuracy and distortion when

considered by themselves or compared with previous statements.

See also *Simon v. Westinghouse Electric Corp.*, 73 F.R.D. 480 (E.D.Pa.1977); *In re U. S. Financial Securities Litigation, supra; In re Penn Central Securities Litigation*, 347 F.Supp. 1327 (E.D.Pa.1972).

■ Closely related to the commonality of questions issue is the question of whether plaintiff's claims are typical of those of the class. Defendants argue that as plaintiff purchased shares throughout the class period, it is to plaintiff's interest that " . . . adverse disclosures *not* be made, as to being able to make his second purchase at the lowest price, he has an interest in them being made." [Uniroyal's Memorandum in Opposition to Plaintiff's Motion for Class Action Determination, p. 12]. Thus, in defendants' view, plaintiff's interest in having adverse disclosures made varied throughout the class period; and, they assert that this theoretical conflict becomes real when one posits the relative claims of three purchasers who bought at the same time as plaintiff: "[w]here three different purchasers are involved in buying at the same time as did Mr. Cohen, the problem is a very real one." [*Id.* at page 12].

■ The typicality requirement of 23(a)(3) has often been equated with the requirement of 23(a)(4) that the representative party must adequately represent the class. Both requirements are intended to insure that plaintiff will present the claims of class members. By requiring typicality, the Rule insures that each class member's claim will be represented. The adequate representation requirement goes toward insuring that the plaintiff's interests are not adverse to the other class members and that the representative's interests are co-extensive with those of other members. 3B Moore's Federal Practice ¶ 23.06–2 at 23–325 (1975). *See also Sommers v. Abraham Lincoln Federal Savings & L. Ass'n*, 66 F.R.D. 581, 587 (E.D.Pa.1975).

■ Although plaintiff's claims do not have to be identical to those of other class members, his claims must be similar enough

to permit the court to conclude that the absent class members' claims will be fully presented. *Siegal v. Chicken Delight, Inc.*, 271 F.Supp. 722 (N.D.Cal.1967), *aff'd sub nom. Chicken Delight, Inc. v. Harris*, 412 F.2d 830 (9th Cir. 1969). *See also Sommers v. Abraham Lincoln Federal Savings & Loan Ass'n, supra.*

Even without the benefit of a great deal of evidence adduced through discovery, it is apparent that there will be some dissimilar fact situations among the class members. Yet such dissimilarities do not require a decision that certification is inappropriate here. The essential issue is whether defendants' conduct constitutes a course of business conduct violative of § 10(b) and Rule 10b–5; as that issue is typical of those of absent class members, the typicality requirement is satisfied. *Accord, In re Sugar Industry Antitrust Litigation*, 73 F.R.D. 322, 338 (E.D.Pa.1976).

■ After careful analysis I find that on the present record the final requirement of Rule 23(a) is also satisfied; plaintiff is a representative party who will fairly insure the adequate representation of all other named plaintiffs.

Adequate representation was defined by the Court of Appeals for this Circuit in *Wetzel v. Liberty Mutual Insurance Co.*, 508 F.2d 239, 247 (3d Cir. 1975):

Adequate representation depends on two factors (a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and (b) the plaintiff must not have interests *antagonistic* to those of the class. (emphasis added)

See also *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 562 (2nd Cir. 1968).

■ Although they do not contest the plaintiff's counsel's ability to adequately conduct this litigation, defendants implicitly challenge the propriety of plaintiff's choice of counsel. Defendants argue that since prior to a luncheon engagement with plaintiff's counsel, plaintiff was unaware of any of the facts which form the gravamen of this action, [Cohen Deposition] plaintiff's

counsel is too closely affiliated with plaintiff. This relationship is all the more problematic in defendants' view because Mr. Cohen lacks independent knowledge of the facts and the subject matter involved in this case; all the information he has obtained to this date was provided by counsel. [Cohen Deposition, at 24–25].

Securities laws are complex: noted legal scholars have differed on several of the basic issues. Thus, the fact that Mr. Cohen relies on the judgment of counsel is not surprising. I am also not alarmed that plaintiff does not demonstrate mastery of the intricacies of the facts which may be said to constitute an action under § 10(b) and Rule 10b–5.

Plaintiff has assured the court of his willingness to prosecute the claims herein; and that is the personal qualification which is primarily relevant. Courts have not generally required class representatives to demonstrate either detailed knowledge of the acts necessary to establish liability under Section 10(b) or a thorough knowledge of all aspects of their claims. *Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 86 S.Ct. 845, 15 L.Ed.2d 807 (1966); *Simon v. Westinghouse Electric Corp.*, 73 F.R.D. at 486; *Dorfman v. First Boston Corp.*, 62 F.R.D. 466, 473 (E.D.Pa.1974); *Weiss v. Sunasco, Inc.*, 316 F.Supp. 1197, 1206 (E.D.Pa.1970).

■ Defendants are concerned that this litigation is nothing more than a strike suit, brought " . . . to coerce corporate managers to settle worthless claims . . " *Surowitz v. Hilton Hotels Corp.*, 383 U.S. at 371, 86 S.Ct. at 850. Moreover, defendants fear that the suit's true purpose is to garner large counsel fees. However, certification of a class action does not signal an abdication of the court's involvement in this litigation, including any proposed settlements. Rule 23(e) requires judicial monitoring of settlements in class actions:

A class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs.

Moreover, as this court stated in *Umbriac v. American Snacks, Inc.*, 388 F.Supp. 265, 275 (E.D.Pa.1975):

> [t]he vision of substantial counsel fees might cloud the judgment of counsel for plaintiffs and the representative parties but the court does not in granting a motion for class determination entrust to the representative parties ultimate responsibility for determining the fairness to the class of settlement decisions which compromise class interests.

*See also Euresti v. Stenner*, 458 F.2d 1115 (10th Cir. 1972); *Kramer v. Scientific Control Corp.*, 365 F.Supp. 780 (E.D.Pa.1973).

Challenging plaintiff's ability to represent the interests of the class he proposes to represent, defendants maintain that plaintiff, who purchased common stock, cannot seek to represent debenture holders and preferred stock holders. Defendants rely on the statement made in *Kusner v. First Pennsylvania Corp.*, 531 F.2d 1234, 1237 (3d Cir. 1976):

> "[A] prospectus containing representations about earnings potential which might be of material interest to a stockholder would, in all likelihood, be of no interest to the bondholder. This is because the bondholder will be paid his principal and interest regardless, and the market price of his security will be determined by factors external to the corporation's earnings."

■ The fact that plaintiff's interest might be different from those holding other types of Uniroyal securities does not necessarily render plaintiff's interest "antagonistic" to those of other class members. And, it may be that there will be no conflict. But although I do not intimate that plaintiff's counsel will be unable to adequately present the interests of all holders to this court, the better result cautions the limitation of plaintiff's class to common stock holders, at least at this time.

Plaintiff would have this court adopt a structure similar to that in *In re Equity Funding Corp. of America Securities Litigation*, 416 F.Supp. 161 (C.D.Cal.1976), where the district court certified a class consisting of all owners of Equity Funding Corporation of America securities, including common stockholders and all debenture holders. However, in that case, the representative plaintiffs included debenture holders. *See also Umbriac v. American Snacks, Inc.*, 388 F.Supp. at 274.

In the instant case, the only representative plaintiff is holder of common stock. Given the complexity of the factual and legal issues and the length of the class period, this court is mindful that all factions of the class must be fully and adequately represented. Thus, purchasers of securities other than common stock will be excluded from the class.

Defendants' final contention under Rule 23(a)(4) is that plaintiff cannot represent those who purchased shares after his final purchase, made October 31, 1975; as indicated, *infra*, plaintiff seeks certification of a class period ending fifteen·days after his last purchase—November 15, 1975.

■ I disagree with defendants' position. In my view plaintiff's status as a proper class representative is not destroyed by extending the class period two weeks after his last purchase, when plaintiff has alleged a continuous course of fraudulent conduct. The interests of purchasers buying between October 31 and November 15, 1975 may be shown to differ. But 23(a)(4) has not been found to turn solely on such differences. The key question under that rule is whether there is antagonism between the class representative and class members. *Wetzel v. Liberty Mutual Insurance Co., supra.* No such antagonism has been shown. Thus, plaintiff can represent those who purchased common stock between October 31 and November 15, 1975.

Once the mandatory requirements of Rule 23(a) have been met, a district court must consider whether the class may be certified under one of the subsections of Rule 23(b). *Katz v. Carte Blanche Corp.*, 496 F.2d 747 (3d Cir.) (en banc), *cert. denied*, 419 U.S. 885, 95 S.Ct. 152, 42 L.Ed.2d 125 (1974). Plaintiff asserts that Rule 23(b) has been satisfied; defendants disagree.

Under Rule 23(b)(3), a class action may be certified if:

> the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

See *Katz v. Carte Blanche Corporation*, 496 F.2d 747, 756 (3d Cir. 1974).

■ Defendants have argued that the common questions do not predominate over individual issues. Their position is, in essence, that the core issues—as to whether defendants' course of conduct constituted a conspiracy cannot predominate over the individual issues of materiality, reliance, due diligence, scienter and damages. However, I find that even though there are undoubtedly some individual issues, these issues do not predominate over the common questions of law and fact.

The very definition of "materiality" in securities litigation suggests that it is usually a common issue.

■ The test as to the materiality of undisclosed or misrepresented facts is an objective one, turning on "whether a reasonable man would attach importance [to them] in determining his choice of action in the transaction." *Rochez Bros., Inc. v. Rhoades*, 491 F.2d 402, 408 (3d Cir. 1974); *Kohn v. American Metal Climax*, 458 F.2d 255, 269 (3d Cir.), *cert. denied*, 409 U.S. 874, 93 S.Ct. 120, 34 L.Ed.2d 126 (1972).

The need for an objective standard of materiality in cases involving several impersonal market transactions was recognized by the Third Circuit in *Thomas v. Duralite Co., Inc.*, 524 F.2d 577, 584 (3d Cir. 1975), where the Court held:

> it is not difficult to accept the necessity for a clearly enunciated objective standard when the 10b–5 suit affects a large number of shareholders who may have had no direct or continuing contact with the corporation.

■ Materiality, therefore, is not generally considered an individual issue. A finding as to which factors a reasonable investor would consider important will constitute a finding that will be common to the class. If the nondisclosures and misrepresentations are found to be material to plaintiff, such nondisclosures and misrepresentations will be material to other class members.

■ Defendants have also argued that the issues of "reliance" and "due diligence" are individual and therefore predominate over the common questions. Yet, proof of reliance is not required in § 10(b) claims if the facts withheld were found to be material:

> Under the circumstances of this case involving primarily a failure to disclose, positive proof of reliance is not a prerequisite to recovery. *All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making the decision.*

*Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 153, 92 S.Ct. 1456, 1472, 31 L.Ed.2d 741 (1972) (emphasis supplied).

Thus, if the nondisclosed facts are material, defendants were obligated to disclose them; and under those circumstances positive proof of reliance is not required; the obligation to disclose and the failure to do so establish the requisite element of causation in fact. *Id.* at 153–154, 92 S.Ct. at 1472; *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 384, 90 S.Ct. 616, 621, 24 L.Ed.2d 593 (1970); *Rochez Bros., Inc. v. Rhoades*, 491 F.2d at 410; *Accord, Landy v. Federal Deposit Insurance Corporation*, 486 F.2d 139, 170 (3d Cir. 1973). I do not suggest that reliance is not an essential element of a § 10(b) claim, only that individual class members may not be required to prove actual reliance at trial. *See Dorfman v. First Boston Corporation*, 62 F.R.D. 466, 477 (E.D.Pa.1974).

■ At this stage in the litigation of the instant case, the court is unable to say, and should not guess, whether Mr. Cohen or any other class member did or did not rely on Uniroyal's annual reports. It may be, as

defendants argue, that evidence will be produced suggesting that the facts not disclosed were not material, or that plaintiff or other class members did not rely on the reports. But, the strengths or weaknesses of plaintiff's claims on the merits are not to be considered in connection with a motion for class certification. Thus, if nonreliance is an affirmative defense to a nondisclosure suit under § 10(b), any consideration of that issue by the court on a motion for class certification would be an improper intrusion into the merits of the case. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974); *Kahan v. Rosenthiel*, 424 F.2d 161 (3d Cir.) *cert. denied*, 398 U.S. 950, 90 S.Ct. 1870, 26 L.Ed.2d 290 (1970); *Dorfman v. First Boston Corp.*, 62 F.R.D. 466, 478 (E.D.Pa.1974); *Richardson v. Hamilton International Corporation*, 62 F.R.D. 413 (E.D.Pa.1974).

If at trial it is determined that individual proof of reliance is required because the case does not involve the nondisclosure of material facts [*Rochez Bros. v. Rhoades, supra*] or because the misrepresentation is not contained in documents prepared for or disseminated to the shareholders and the investing public [*Landy v. FDIC, supra*] this court can hold separate hearings to determine which members of the class relied on the reports. *Green v. Wolf Corp.*, 406 F.2d at 301; *Sharp v. Coopers & Lybrand*, 70 F.R.D. 544, 576 (E.D.Pa.1976).

Due diligence, like reliance, can be an individual issue in certain cases. But, since the Supreme Court in *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976), limited § 10(b) and Rule 10b–5 actions to those in which the defendant acts intentionally, the due diligence test becomes less compelling. *Straub v. Vaisman & Co., Inc.* 540 F.2d 591, 597 (3d Cir. 1976). Thus, if there is a showing of scienter, the investors are only required to act reasonably; the burden of proof rests upon the defendants to show that the class members have not. This court will not speculate as to whether plaintiff can show the requisite intent. This court will also not speculate as to whether defendants can

maintain any affirmative defenses. Should factors be revealed indicating that all shareholders are not similarly situated, this court can require separate hearings as to the due diligence issue.

Defendants' final claim as to the predominance requirement is that the class should not be certified because the issue of damages is individual to each class member. Yet, damages can be assessed once there is a determination of liability. *See Dorfman v. First Boston Corporation*, 62 F.R.D. 466, 473 (E.D.Pa.1974).

Rule 23(b)(3) requires predominance, not identity or unanimity among class members. The central issues, common to all purchasers of Uniroyal securities, are whether the alleged nondisclosures constitute a scheme to defraud Uniroyal shareholders. Without class action certification, Uniroyal's shareholders will have two options. One, the shareholders who believe they have suffered a loss may not seek redress because their individual losses may be too small to motivate them to institute individual actions. Or, two, the shareholders may clog court dockets with multiple and scattered suits. In either case, the result would be both unjust and inefficient; the goals of Rule 23, the achievement of "economies of time, effort and expense" (1966 Advisory Committee Note, 39 F.R.D. 98, 102–103 (1966)), would clearly be defeated.

Moreover, I am mindful of the Third Circuit's statement in *Kahan v. Rosenthiel*, 424 F.2d 161, 169 (3d Cir. 1970), quoting *Esplin v. Hirschi*, 402 F.2d 94, 101 (10th Cir. 1968), *cert. denied*, 394 U.S. 928, 89 S.Ct. 1194, 22 L.Ed.2d 459 (1969)).

[S]ince the effectiveness of the securities laws may depend in large measure on the application of the class action device, "the interests of justice require that in a doubtful case, . . . any error, if there is to be one, should be committed in favor of allowing the class."

Therefore, this court will certify the following plaintiff class:

All purchasers of Uniroyal common stock, who purchased said stock between December 1, 1972 and November 15, 1975.

Defendants have filed most thorough and thoughtful briefs. Though the weight of the present record preponderates against their positions, defendants' contentions are not frivolous. Of course, by necessity at this posture, when the ultimate merits are not being adjudicated, we are confronted with a limited record. Accordingly, my judgment is without prejudice to any reconsideration of the adequacy of the representation or the appropriateness of plaintiff as a class representative if any significant compelling factors are called to my attention and these factors are matters which the defendants, with good cause, could not have previously anticipated.