Lance L. SAFRAN, Robert G. Schlachter, Anton J. Kotar, Carl Potenziani, Nicholas Hovan, Jr., Anthony G. Marinov, Paul A. Tague, and Alfred A. Matteucci, (individually and on behalf of a class), Plaintiffs,

v.

UNITED STEELWORKERS OF AMERICA, AFL–CIO, a labor organization, United States Steel Corporation, a Delaware corporation, and its successor, USX Corporation, a Delaware corporation, Defendants.

Civ. A. No. 87–2191.

United States District Court, W.D. Pennsylvania.

Oct. 31, 1989.

Joseph A. Yablonski, John F. Colwell, Yablonski, Both & Edelman, Washington, D.C., for plaintiffs.

Richard J. Brean, Asst. Gen. Counsel, United Steelworkers of America, S.G. Clark, Dawne S. Hickton, Law Dept. U.S.X. Corp., Pittsburgh, Pa., for defendants.

## MEMORANDUM OPINION

COHILL, Chief Judge.

Presently before us is plaintiffs' Motion for Class Action Certification. On June 15, 1989, we heard oral argument on the plaintiffs' motion. For the reasons that follow, we will grant plaintiffs' motion as to Counts I and II of the Amended Complaint,

and we will deny it with respect to Count III.

## I. BACKGROUND

Plaintiffs are former employees of the defendant, United States Steel Corporation, and its successor, USX Corporation (hereinafter referred to collectively as "the Company"). On October 15, 1987, they filed a complaint under section 301(a) of the Labor Management Relations Act of 1947, 29 U.S.C. § 185(a), section 9(a) of the National Labor Relations Act of 1947, 29 U.S.C. § 159(a), and section 510 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.*

In Counts I and II of the Amended Complaint, plaintiffs allege that the Company breached the collective bargaining agreement applicable to the employees at the Valley Machine Shop ("VMS") in Homestead, Pennsylvania, where the plaintiffs worked, and that the defendant United Steelworkers of America ("the Union") breached its duty of fair representation by withdrawing the plaintiffs' contract grievance. This type of action, in which employees concurrently sue their employer for breach of contract and their union for breach of its duty of fair representation is commonly referred to as a "hybrid" cause of action. In Count III of the Amended Complaint, plaintiffs seek damages from both defendants for allegedly interfering with their rights to attain certain early retirement benefits.

Plaintiffs aver that in early 1980, the Company began contracting out work from VMS at Homestead without notification to the Union and in violation of the collective bargaining agreement, dated August 1, 1980. According to the plaintiffs, the Company continued contracting out work through the term of the August 1, 1983 collective bargaining agreement. On May 22, 1984, Local 1397 of the Union filed a class grievance on behalf of all employees affected by the contracting out practices, and sought backpay, benefits and the recall of laid off workers. In addition, they requested years of service awards, hoping to reinstate their eligibility for early retirement "Rule-of-65" payments.

Under the collective bargaining agreement, the Company provided a comprehensive employee benefit plan, part of which was the Rule of 65 pension. This pension was paid to employees who had at least 20 years of continuous service on the last day worked, and whose combined age and service was greater than 65, but less than 80. Plaintiffs' Amended Complaint, at 10. The Company's obligation to pay this pension arose when employees, after attaining the requisite eligibility, experienced at least a 5 year break in service as a result of plant shutdown, involuntary layoff or absence due to physical disability. Plaintiffs maintain that they were laid off due to the Company's contracting out practices. *Id.* At the time of layoff, they were within weeks or months of qualifying for Rule of 65 retirement. *Id.* As a result, they lost years of service and their eventual entitlement to Rule of 65 retirement benefits.

USX denied the grievance, and the matter proceeded to arbitration in March, 1986. In June 1987, after the arbitrator conducted a hearing, but before he rendered a decision, the Union withdrew the grievance. According to the allegations contained in the Amended Complaint, the Union withdrew the grievance without legal consideration and without consulting or notifying the affected employees. The Union's withdrawal of the grievance, urge the plaintiffs, was a breach of the Union's duty of fair representation and foreclosed the plaintiffs' claims for backpay, seniority, recall and pension benefits.

In addition, the plaintiffs maintain that the Company sought withdrawal of the contracting out grievance to prevent them from obtaining Rule of 65 pensions, and that the Union entered into a contract settlement with the Company which prevented the plaintiffs from qualifying for such benefits. According to the plaintiffs, these facts constitute an unlawful interference with their rights to attain early retirement benefits in violation of ERISA.

■ In this Motion, plaintiffs seek to represent a class defined as, "all persons

employed in a production and maintenance job at USS' Valley Machine Shop on May 22, 1984 or at any time thereafter, including active employees and employees on lay-off status, subject to recall." All parties have submitted voluminous briefs on this issue, the bulk of which deal with the allegations concerning the merits of this case. A motion for class action certification, however, is not the proper occasion for a mini-hearing on the merits. We therefore will address only those issues relevant to the inquiries mandated by Rule 23 of the Federal Rules of Civil Procedure. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177, 94 S.Ct. 2140, 2152, 40 L.Ed.2d 732 (1974) ("We find nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action.").

## II. DISCUSSION

▪ Under Federal Rule of Civil Procedure 23(a), a plaintiff may sue on behalf of a class only if:

(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

In addition to satisfying each of the prerequisites set forth in Rule 23(a), the proposed class must meet one of the three standards under Rule 23(b). Plaintiffs seek certification pursuant to Rule 23(b)(3) which provides for class action status when, "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy." The party invoking Rule 23 has the burden of showing that all of the prerequisites to utilizing the class action procedure have been fulfilled. *Eisen, supra*, 417 U.S., at 165, 94 S.Ct. at 2146; *Weiss v.*

*York Hosp.*, 745 F.2d 786, 807 (3d Cir. 1984), *cert. denied*, 470 U.S. 1060, 105 S.Ct. 1777, 84 L.Ed.2d 836 (1985). However, Rule 23 has generally been accorded a liberal interpretation. *Buchholtz v. Swift & Company*, 62 F.R.D. 581, 595 (D.Minn. 1973).

### A. *Numerosity*

In general, the numerosity requirement is satisfied when the proposed class exceeds 100 members. *Fox v. Prudent Resources Trust*, 69 F.R.D. 74, 78 (E.D.Pa. 1975); *Kromnick v. State Farm Ins. Co.*, 112 F.R.D. 124, 127 (E.D.Pa.1986). Plaintiffs propose to certify a class consisting of all individuals, including those who were laid off and subject to recall, who were employed in a maintenance or production job at VMS as of May 22, 1984, the date the contracting out grievance was filed. All members of the class, argue plaintiffs, are former VMS employees, are members of the Union and are participants in the United States Steel Corporation Plan for Employee Pension Benefits. Plaintiffs' Amended Complaint, at 3. Plaintiffs aver that on May 22, 1984, "there were approximately 200 machinists and another 100 employees in other jobs at VMS who were potential beneficiaries of a successful prosecution or resolution of the contracting-out grievance." Plaintiffs' Memorandum, at 27.

Defendants maintain that plaintiffs have failed to adequately define the class, thus rendering the class makeup speculative and imprecise. Defendant USX's Memorandum in Opposition to Motion for Class Action Certification, at 14; Defendant United Steel Workers of America's Memorandum in Opposition to Motion for Class Action Certification, at 13–18. In addition, they assert that plaintiffs have failed to factually support their composition of the class. *Id.*, at 16.

▪ We disagree. Rule 23 does not contain any implicit requirement that the plaintiffs demonstrate with particularity the characteristics of the class. Rather, at this preliminary stage of the case, the plaintiffs

merely have an obligation to define the class in a way that enables the court to determine whether a particular individual is a class member so as to ensure protection of the interests of all potential class members. *See Wagner v. Central Louisiana Elec. Co., Inc.*, 99 F.R.D. 279, 282 (E.D.La. 1983) ("courts have not required that the class be so clearly ascertainable that every potential member can be readily identified at this stage of the litigation.").

Plaintiffs have defined the class as all individuals in a production or maintenance job at VMS as of May 22, 1984, including those individuals who were laid off and subject to recall. This definition is based on objective factors and enables the Court to easily identify potential class members by a simple reference to the Company's seniority or employment records. Indeed, the plaintiffs have produced one such list which shows the names of 200 machinists and 100 other employees as of April 23, 1982. Plaintiffs' Exhibit 3. In addition, they have produced a list which shows the names of 115 machinists employed by the shop as of June 16, 1987. Plaintiffs' Exhibit 38.

■ Defendants next contend that even if the class numbers 300, joinder is feasible since all members reside in the Western District of Pennsylvania, and since identification of the members is easily ascertainable by reference to the Company's employment records. USX's Memorandum, at 18; USWA's Memorandum, at 22–23. This argument misses the mark. To satisfy the numerosity requirement, plaintiffs need not show that joinder is impossible; they need only demonstrate that it is impracticable. *Fox v. Prudent Resources Trust*, 69 F.R.D. 74, 78 (E.D.Pa.1975). The numerosity requirement reflects the general theory behind class action lawsuits which is to permit a large group of individuals whose interests are sufficiently related to bring one lawsuit, instead of many lawsuits, so as to conserve judicial resources and increase judicial access. Here, given the size of the class, the judicial system likely will be burdened with numerous identical individual suits. Accordingly, we hold that the plaintiffs have met their burden of proof on the first prerequisite to the maintenance of a class action.

### B. *Commonality*

■ The second requirement under Rule 23 is the commonality of legal or factual questions among the class. The plaintiff satisfies this element by demonstrating the existence of a " 'common nucleus of operative facts,' " *Cohen v. Uniroyal, Inc.*, 77 F.R.D. 685, 690 (E.D.Pa.1977), quoting *Entin v. Barg*, 60 F.R.D. 108, 113 (E.D.Pa. 1973), or by showing the existence of common questions of law. *In re Glassine & Greaseproof Paper Antitrust*, 88 F.R.D. 302, 304 (E.D.Pa.1980). However, Rule 23(a)(2) does not require that all the questions of law and fact raised by the dispute be common or classwide; it only mandates the prevalence of more than one issue.

Defendants maintain earnestly that plaintiffs have failed to prove this element, arguing that common issues of fact do not exist. USX's Memorandum, at 20; USWA's Memoranudum, at 27. According to the defendants, each instance of contracting out involves a separate factual and legal determination as to whether the decision to contract out was in violation of the collective bargaining agreements. In addition, they assert that over the relevant time period, "instances of contracting-out most likely number in the hundreds...." USX's Memorandum, at 20. This argument, however, does not comport with the plaintiffs' allegations in this lawsuit.

Plaintiffs contend that the Company engaged in a pattern of contracting out work at VMS in violation of two collective bargaining agreements. The alleged harm, the loss of jobs, wages and benefits, affected everyone in the class. Whether or not the Company breached the collective bargaining agreement does not depend on which member of the class raises the instances of contracting out, because this is not the essence of the alleged contract breach. Plaintiffs merely assert that it was the Company's standard practice to contract out work in violation of the collective bargaining agreement, and that this

practice led to the plant closing and concurrent termination of the class' employment. Accordingly, this is one legal issue common to the class.

Another common legal issue is whether the Union breached its duty of fair representation by withdrawing the VMS grievance from arbitration. The class, all members of the Union, will presumably be making the same argument that the Union's single action of abandoning the grievance violated their legal obligation to protect the class. The Court finds these common questions of law and fact sufficient to fulfill the requirements of commonality.

### C. *Typicality*

■ Rule 23(a)(3) mandates that the claims of the representatives be typical of those of the entire class. The purpose of the rule is to ensure adequate representation. 7A C. Wright, A. Miller, M. Kane, *Federal Practice and Procedure* 1764 (2d ed. 1986). Plaintiffs will satisfy the typicality requirement if their claims stem from the same event or course of conduct and are based on the same legal theory that gives rise to the claims of other class members. *Paskel v. Heckler*, 99 F.R.D. 80, 83–84 (E.D.Pa.1983). Similar to the commonality requirement, the representatives' claims need not be identical to those of the absent class members. However, typicality will be lacking if their claims are strikingly different.

Defendants strenuously argue that the typicality requirement is not met here. They concede that the named representatives are similarly situated on the seniority list so that one instance of contracting out equally deprived the named representatives of lost work hours. However, the absent class members, because of their lower position on the seniority list, were not similarly affected. The defendants conclude that "because ... the individual circumstances of each plaintiff will vary according to the time of each USX decision to contract out, and because back pay recovery for plaintiffs does not necessarily entail recovery for other class members, typicality cannot be found to exist." USX's Memorandum,

at 26. The essence of their contention is that seniority differences among the representatives and the putative class will inevitably engender conflict among the group, because the more senior representatives will be entitled to larger damages awards. As a result, the representatives' obligation of adequate representation will ultimately be impaired.

This argument misconstrues the nature of the typicality requirement. Regarding the hybrid 301/fair representation cause of action, the plaintiffs and the putative class members are all proceeding under the same theories of liability, and are seeking the same remedies. In order to prevail, they must establish a pattern or practice of contracting out work in violation of the collective bargaining agreement, and a breach of the duty of fair representation by the Union in prematurely abandoning the grievance. The hybrid 301/fair representation claim of the named plaintiffs and the class members arises from the same course of conduct by the defendants—the practice of contracting out work and the withdrawal of the grievance. The common injury allegedly suffered by the entire class is the loss of jobs and benefits.

■ Although the severity of the injury allegedly experienced by the representatives may vary, the source of the injury is the same for the entire class. The named plaintiffs need not be in a position identical to that of every member of the class. *Rich v. Marietta Corp.*, 522 F.2d 333, 340 (10th Cir.1975). Moreover, a disparity in damages among class members will not bar a finding that the claims of the representatives are typical of the proposed class and that they will fairly and adequately protect the interests of the members. *McQuilken v. A. & R. Development Corp.*, 576 F.Supp. 1023, 1029 (E.D.Pa.1983); 7A C. Wright, A. Miller, M. Kane, *supra*, 1764. Accordingly, because all plaintiffs are required to establish the same basic factual and legal elements in order to prevail, and since the theories of liability offered are the same, we find that the typicality requirement is met as to the hybrid 301/fair representation claim.

However, as to the ERISA claim, we hold that typicality is lacking between the plaintiffs and the putative class. Plaintiffs assert that at the time of their layoff, they were within weeks or months of qualifying for Rule of 65 retirement pursuant to the collective bargaining agreement. They contend that the concerted action of the Company and Union was aimed at defeating or interfering with their rights to receive these benefits. Specifically, they claim that, "USS sought withdrawal of the contracting-out grievance to prevent them and others from obtaining Rule of 65 pensions, that USWA entered into an agreement which prevented them from qualifying for such benefits, and that both Defendants thereby violated Section 510 of ... ERISA." Plaintiffs' Memorandum, at 3.

This claim is not typical of the proposed class, as the class members did not have enough seniority to approach qualification for Rule of 65 retirement, and thus did not suffer the same injury as the named representatives. The essence of the claim is that the defendants' actions were designed to prevent the plaintiffs from attaining eligibility for Rule of 65 benefits in violation of Section 510 of ERISA. The withdrawal of the grievance, solicited by the Company and carried out by the Union, was an effort to manipulate the plaintiffs' length of employment in order to deprive them of Rule of 65 pension benefits.

Section 510 of ERISA does not guarantee pension benefits; it merely prohibits discrimination with respect to pension benefits on the basis of one's proximity to such benefits. A review of the Complaint reveals that all of the named representatives were within weeks of attaining eligibility for Rule of 65 retirement. However, the absent class members who were younger and who had less seniority were years away from qualifying for such benefits.

Thus, the plaintiffs and putative class are not similarly situated regarding their proximity to the benefits. Unlike the putative class, the plaintiffs were all laid off in 1984, never recalled and were within weeks of attaining eligibility for Rule of 65 pensions. The plaintiffs and absent class members did not suffer the same alleged discrimination with respect to attaining Rule of 65 pensions, because their contiguity to qualifying for such benefits was not the same. Accordingly, we hold that a class may not be maintained as to the ERISA claim, and that the plaintiffs will have to proceed on their own under this theory of liability.

### D. *Adequacy of Representation*

The fourth prerequisite to the maintenance of a class action pursuant to Rule 23 is that the representative party fairly and adequately protect the interests of the class. This requirement, grounded in the Due Process Clause, recognizes that class actions differ from individual adjudications insofar as class members are bound by a settlement or judgment even though they do not choose the forum and are often unaware of the litigation. 7B C. Wright, A. Miller, M. Kane, *supra*, 1789. As such, the United States Constitution requires adequate representation in order to afford due process to class members. *Hansberry v. Lee*, 311 U.S. 32, 43, 61 S.Ct. 115, 118, 85 L.Ed. 22 (1940). The burden is on the defendant to prove that the representation will be inadequate. *Lewis v. Curtis*, 671 F.2d 779, 783 (3d Cir.1982).

The United States Court of Appeals for the Third Circuit has stated that adequate representation depends on: (1) the qualifications and competence of plaintiff's attorney; and (2) whether plaintiff's interests are antagonistic to those of the class. *Wetzel v. Liberty Mutual Insurance Co.*, 508 F.2d 239, 247 (3d Cir.), *cert. denied*, 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975).

Plaintiffs have retained counsel experienced in class action and labor law litigation, and defendants do not contest the quality and experience of plaintiffs' counsel. We thus find the first aspect of the inquiry under Rule 23(a)(4) satisfied.

However, defendants do maintain that the plaintiffs' interests do not coincide with the interests of the absent class. According to the defendants, the representatives will invariably oppose one another, as well

as the rest of the class, during the remedial stages of the litigation because of the limited amount of available jobs. USX's Memorandum, at 31–32; USWA's Memorandum, at 31–32. To the extent that one member wins reinstatement, argue the defendants, another member will lose his entitlement to that relief. *Id.* This will create antagonism among class members and make representation by the named plaintiffs inadequate.

■ We agree with the defendants' basic premise that a representative cannot adequately protect the class if his interests are antagonistic to those he purports to represent. However, at this preliminary stage of the case, we believe that the possibility of antagonistic interests between the plaintiffs and absent class members is too speculative to preclude class certification on the basis of inadequate representation. VMS has been sold, and thus none of the plaintiffs or the class will ever win reinstatement at VMS. Furthermore, even if the named plaintiffs possibly could win reinstatement at the other USX/USS facilities, this does not necessarily render them inadequate representatives.

Rule 23(c)(4) authorizes the court to certify a class with respect to particular issues or to divide the class into appropriate subclasses. Accordingly, any conflicts concerning proof of damages, should they arise, can be handled by the formation of subclasses after the primary issue of liability has been decided. *Halderman v. Pennhurst State School & Hospital,* 612 F.2d 84, 109–110 (3d Cir.1979). In addition, this Court is capable of policing any settlement relief that may compromise younger class members. At this stage of the litigation, we are convinced that the interests of the absent class members will be adequately protected.

## E. *Rule 23(b) Conditions*

Having fulfilled the requirements of Rule 23(a), plaintiffs must also satisfy the requirements of Rule 23(b). Plaintiffs seek certification of a class action under Rule 23(b)(3). Pursuant to this section, a class action is appropriate when common questions of law or fact are present and when the parties can best serve their interests by settling their differences in a single action.

### (1) Predominance of Common Issues of Law or Fact

Under the first inquiry of Rule 23(b)(3), it is not essential that common questions of fact or law be identical among class members, they must only predominate. *Cohen, supra,* 77 F.R.D., at 695. To defeat the plaintiffs' claim of predominant factual and legal issues, defendants reiterate their argument that the Court will have to determine the legality of each instance of contracting out, thus causing the trial to disintegrate into multiple factual issues.

However, as we previously stated, the complaint alleges a practice or pattern of contracting out in violation of the collective bargaining agreement. Whether or not the Company breached the collective bargaining agreement does not depend on who raises the instances of contracting out, or how many jobs the Company contracted out.

In addition, plaintiffs have alleged a breach of the Union's duty of fair representation in withdrawing the grievance from arbitration. As to the ultimate burden of proof regarding the claim of breach of the duty of fair representation, plaintiffs must establish that the Union's withdrawal of the grievance was "arbitrary, discriminatory or in bad faith." *Vaca v. Sipes,* 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1967). This is another legal issue which unites all members of the class.

Accordingly, if each class member were to bring an individual class action, each would have to prove that the Company engaged in a practice of contracting out work in violation of the collective bargaining agreement, and that the Union breached its duty of fair representation by withdrawing the grievance. Common factual and legal issues link the entire class, making adjudication of their rights in a single action appropriate. Although individual disparities in the amount of damages may exist, we find that common questions regarding defendants' liability prevail. The need for individual damage calculations

does not diminish the suitability of class certification when common questions regarding liability predominate. *Liberty Alliance of the Blind v. Califano*, 568 F.2d 333, 346–47 (3d Cir.1977).

### (2) Superiority of Class Action

The second element that the plaintiffs must demonstrate before they can maintain an action under Rule 23(b)(3), is that the class action is superior to other available methods for the fair and efficient adjudication of the controversy. We find that a class action is the superior method for resolving this action because of the predominance of the common questions and because of the large number of possible claimants.

The alternative to a class action is for potential claimants to bring individual lawsuits. This would not only result in an inefficient use of judicial resources, but would also risk inconsistent rulings and verdicts. Moreover, many of the claimants would otherwise be deterred from filing individual actions due to the large costs of litigation and their relatively small amount of individual damages. Finally, the proposed class presents no management difficulties as the class is finite and easily identifiable.

Accordingly, we hold that plaintiffs have satisfied the requirements of Rules 23(a) and 23(b)(3) regarding the hybrid 301/fair representation claim. However, the plaintiffs have failed to meet their burden on the ERISA claim. Consequently, we will grant their Motion for Class Action Certification only as to Counts I and II of the Amended Complaint.

An appropriate Order will issue.

### ORDER

AND NOW, to-wit, this 31st day of October, 1989, for the reasons set forth in the accompanying Opinion, it is hereby ORDERED, ADJUDGED and DECREED that:

1) Plaintiffs' Motion for Class Action Certification is GRANTED only with respect to Counts I and II of the Amended Complaint;

2) Plaintiffs' Motion is DENIED with respect to Count III of the Amended Complaint;

3) Plaintiffs are CERTIFIED to bring this action as the representative party on behalf of all persons employed in a production or maintenance job at USS' Valley Machine Shop on May 22, 1984 or at any time thereafter, including active employees and employees on layoff status, subject to recall;

4) The law firm of Yablonski, Both & Edelman is designated as counsel for the class;

5) The class representatives shall give the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable efforts, pursuant to Fed.R.Civ.P. 23(c)(2). Such notice shall inform each member that: (a) he will be excluded from the class by a specific date if he so requests; (b) the judgment, whether favorable or not, will include him if he does not request to be omitted from the class; and (c) if he does not choose to be omitted from the class, he may enter an appearance through his counsel.