Sarah K. STEINER, Gwynneth Ziegler and Keith Brody on behalf of themselves and all other persons similarly situated, Plaintiffs,

v.

EQUIMARK CORPORATION, Equibank, Equimark Commercial Financial Company, M.A. Cancelliere, William E. Bierer, Richard W. Plumb, Robert F. Kastelic and Gerald B. Knell, Defendants.

Civ. A. Nos. 81–1988, 81–2065 and 81–2128.

United States District Court, W.D. Pennsylvania.

Jan. 27, 1983.

Howard A. Specter, Specter & Buchwach, Pittsburgh, Pa., for plaintiff Brody and for all plaintiffs as liaison counsel.

Daniel W. Krasner, Fred Taylor Isquith, Wolf, Haldenstein, Adler, Freeman & Herz, New York City, Richard Greenfield, Greenfield & Chimicles, P.C., Bala Cynwyd, Pa., for Steiner.

Gene Mesh, Gene Mesh Co., L.P.A., Cincinnati, Ohio, for Ziegler.

Edwin L. Klett, Eckert, Seamans, Cherin & Mellott, Pittsburgh, Pa., for defendants.

## OPINION

MANSMANN, District Judge.

This matter is before the Court on a Motion for Class Certification filed by Plaintiffs Sarah K. Steiner, Gwynneth Ziegler and Keith Brody in the above-captioned cases.[1] Plaintiffs brought these actions on behalf of themselves and as representatives of a proposed class, seeking damages for alleged violations of the federal

---

1. The above-captioned cases were consolidated by Order dated December 1, 1981. Prior to that date, Plaintiffs Steiner and Ziegler had filed individual Motions "for Class Action Determination" and "for Class Certification" respectively. Plaintiff Brody did not file an individual Motion with regard to class certification before the cases were consolidated. No additional Motions for Class Certification, either individual or consolidated, have been filed. The Consolidated Amended Complaint as well as Plaintiff's Brody's original Complaint make clear, however, that all of these actions were brought as class actions. Further, all parties to this litigation have treated the Motions with regard to class certification as a Motion for Class Certification on behalf of all Plaintiffs. We note in this regard that the Order of December 1, 1981 instructed all three Plaintiffs to submit a consolidated brief with regard to the maintenance of a class action. Therefore, this Court will treat the matter now before us as a Motion for Class Certification filed on behalf of all three named Plaintiffs.

securities laws.[2] For the reasons set forth below, Plaintiffs' Motion is granted.[3]

\* \* \*

## I. FACTUAL BACKGROUND

 Fed.R.Civ.P. 23 does not authorize an inquiry into the merits when passing upon a class certification motion nor is such an inquiry considered appropriate. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177–78, 94 S.Ct. 2140, 2152–53, 40 L.Ed.2d 732 (1974). In this regard, a determination of whether there is a proper class does not depend upon the existence of a cause of action. *Id.* at 178, 94 S.Ct. at 2152–53. *See also Kahan v. Rosenstiel,* 424 F.2d 161, 169 (3d Cir.), *cert. denied sub nom.,* 398 U.S. 950, 90 S.Ct. 1870, 26 L.Ed.2d 290 (1970). Therefore, a brief summary of Plaintiffs' allegations will suffice for purposes of the Motion before us.

Plaintiffs in this litigation are purchasers of common stock in Defendant Equimark Corporation ("Equimark").[4] Equimark is a one-bank holding company whose offices are in Pittsburgh, Pennsylvania. Defendant Equibank, a full-service bank, is a wholly-owned subsidiary of Equimark and accounts for 97% of Equimark's assets. Its offices are also located in Pittsburgh. Defendant Equimark Commercial Finance Company ("Commercial") is a wholly-owned subsidiary of Equimark and is also headquartered in Pittsburgh. The five individual Defendants were officers of the three corporate Defendants during the relevant time period.

The gravamen of Plaintiffs' Consolidated Amended Complaint ("Complaint") is that commencing on a date prior to February 1979 and continuing through September 28, 1981 (the "class period"), Defendants issued reports and other documents which allegedly misrepresented, by the inclusion of false statements of material fact and the omission of other material facts, the true financial condition of Equimark.

Specifically, Plaintiffs contend that prior to and continuing through the class period, Defendants conspired to conceal the severe problems which plagued certain loans extended by them to FSC Corporation ("FSC")[5] and to others. According to Plaintiffs, these loans seriously jeopardized Equimark's financial condition, particularly because of their high risk and because of inadequate reserves and inadequate collateral to secure their repayment.

Defendants allegedly knew the problems surrounding the loans, including the remote possibility of repayment on a substantial portion thereof and the strong likelihood of large loan losses, but Defendants allegedly concealed these circumstances through material misrepresentations and omissions in shareholder reports, financial statements and other documents.

Plaintiffs contend that as a consequence of Defendants' fraudulent conduct, all purchases of Equimark common stock made during the class period were at artificially inflated prices. According to Plaintiffs, the disclosure in September 1981[6] of previous-

---

2. Plaintiffs also allege common law fraud. For purposes of Plaintiffs' Motion, we are certifying the class at the present time with regard to all allegations in Plaintiffs' Consolidated Amended Complaint. *See Sharp v. Coopers & Lybrand,* 70 F.R.D. 544 (E.D.Pa.1976).

3. Note, however, that the certified class period will conform to the class period proposed by Plaintiffs only in the event that Plaintiffs amend their Consolidated Complaint in a manner consistent with this Opinion by the date specified in the attached Order.

4. Plaintiff Ziegler purchased stock in October 1979. Plaintiff Steiner purchased stock in October and December 1980 as well as in March, May and September 1981. Plaintiff Brody purchased stock in August 1981.

5. FSC is a former 55%-owned subsidiary of Equimark. Plaintiffs allege that Equimark caused and permitted Commercial to extend credit to FSC in a manner inconsistent with prudent lending procedures while concealing these arrangements in its shareholder reports and other documents.

6. The disclosure to which Plaintiffs refer is an Equimark news release dated September 28, 1981 and a letter to shareholders dated October 2, 1981 which enclosed a copy of the news release. The news release announced the commencement of involuntary bankruptcy proceedings against FSC by Commercial and certain other creditors. Also announced were loan losses during the third quarter that included $10.3 million of loans to FSC. These losses,

ly-concealed facts resulted in a great decline of the stock's market price, thereby damaging Plaintiffs and the class members.

Plaintiffs brought the present actions[7] pursuant to Sec. 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. Sec. 78j(b),[8] and Rule 10b–5, 17 C.F.R. Sec. 240.10b–5,[9] promulgated thereunder by the Securities and Exchange Commission.

Plaintiffs also allege common law fraud, presumably based on pendent jurisdiction.[10]

■ Plaintiffs have moved under Fed.R. Civ.P. 23 for the certification of the following class:[11]

All persons, other than Defendants, who purchased shares of Equimark common stock from approximately February 1979 to September 29, 1981.

Defendants oppose the certification of a class, arguing that Plaintiffs fail to meet almost every requirement of Rule 23 except numerosity. Their objections focus on three areas in particular: adequate representation, predominance and superiority. This Court will consider the arguments with regard to each area or requirement separately and will resolve them accordingly.

\* \* \*

combined with loan losses incurred during the second quarter, meant a full "writeoff" of the entire balance of the FSC loans in the amount of $25.3 million. Finally, the release noted that a suspension of cash dividends on Equimark common stock would be recommended to the Board of Directors.

7. See n. 1 infra.

8. Section 10(b) provides:
It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—
(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.
15 U.S.C. Sec. 78j(b)

## II. CLASS CERTIFICATION

■ A district court has wide discretion with respect to class determinations. *Neely v. United States,* 546 F.2d 1059, 1070 (3d Cir.1976).

■ It is well established that suits on behalf of shareholders under the federal securities laws are prime candidates for class action treatment and that Rule 23 should be liberally construed to that end. *Sley v. Jamaica Water and Utilities, Inc.,* 77 F.R.D. 391, 394 (E.D.Pa.1977). Indeed, "since the effectiveness of the securities laws may depend in large measure on the application of the class action device, 'the interests of justice require that in a doubtful case ... any error, if there is to be one, should be committed in favor of allowing the class action.'" *Kahan v. Rosenstiel, supra* at 169, quoting *Esplin v. Hirschi,* 402 F.2d 94, 101 (10th Cir.1968), *cert. denied,* 394 U.S. 928, 89 S.Ct. 1194, 22 L.Ed.2d 459 (1969).

### A. Requirements of Rule 23(a)

■ For a suit to be certified as a class action, all four requirements of Rule 23(a) and at least one of the subsections of Rule 23(b) must be satisfied. *Katz v. Carte Blanche Corp.,* 496 F.2d 747, 756 (3d Cir.),

9. Rule 10b–5 provides:
It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
(a) To employ any device, scheme, or artifice to defraud.
(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made in the light of the circumstances under which they were made, not misleading, or
(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.
17 C.F.R. Sec. 240.10b–5

10. See n. 2 infra.

11. See n. 1 infra.

*cert. denied,* 419 U.S. 885, ·95 S.Ct. 152, 42 L.Ed.2d 125 (1974).

Rule 23(a) provides that a class may be certified under the following circumstances:

> ... only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a).

### 1. Numerosity

■ Defendants do not contest that Plaintiffs have met the numerosity requirement. Nevertheless, we note that Plaintiffs allege that 4,329,000 shares of Equimark common stock were issued and outstanding during the class period, exclusive of those shares held by Equimark as treasury stock. These outstanding shares were owned by approximately 14,000 shareholders. Based upon information currently available, Plaintiffs believe that the number of class members is in the thousands.[12] Clearly, the numerosity requirement has been met in this case.

### 2. Commonality

■ Rule 23(a)(2) requires a showing of common questions of law *or* fact. The Rule does *not* require identity of both law *and* facts. *Cohen v. Uniroyal, Inc.,* 77 F.R.D. 685, 691 (E.D.Pa.1977).

■ It has been held that an action based upon a number of different documents issued at different times can be maintained as a class action if the alleged misrepresentations or omissions are the same or similar throughout the class period. *See generally Simon v. Westinghouse Electric Corp.,* 73 F.R.D. 480, 483 (E.D.Pa.1977).

Thus, the Advisory Committee on Rule 23 has commented that "a fraud perpetrated on numerous persons by the use of similar misrepresentations may be an appealing situation for a class action, and it may remain so despite the need, if liability is found, for separate determination of the damages suffered by individuals within the class." Advisory Committee on Rule 23, Proposed Amendments on Rules of Civil Procedure, 39 F.R.D. 69, 103 (1966).

Other courts, however, have held that a common question exists where a common scheme of deception is alleged even if the suit is based upon otherwise unrelated misrepresentations or omissions. *See, e.g., Simon v. Westinghouse Electric Corp., supra* at 483. *See also Cohen v. Uniroyal, Inc., supra* at 691 ("the common question test is clearly satisfied when a series of annual reports and other corporate financial statements uniformly misrepresent or fail to disclose certain items").

In particular, the alleged existence of a conspiracy to inflate artificially the price of securities or to maintain an inflated value of the securities, as is alleged in the instant case, has been found sufficient to satisfy the commonality requirement. *Simon v. Westinghouse Electric Corp., supra* at 483; *Piel v. National Semiconductor Corp., supra* at 368.

■ The perpetuation of the alleged wrong over a lengthy period of time and through a variety of different documents does not defeat a class certification motion. *See Piel v. National Semiconductor Corp., supra* at 368. Nor is such a motion defeated by fluctuations in the underlying facts over the class period. *Cohen v. Uniroyal, Inc., supra* at 691.

■ Defendants in the instant case argue that a common course of conduct does not exist here. The question, however, of whether there is a common course of conduct is not properly before us at this junc-

---

12. Plaintiffs have averred only a rough estimate of the number of potential class members. They are not, however, required to provide the exact number at this time. Equimark's records may be used later to give accurate notice to all potential class members. *See Piel v. National Semiconductor Corp.,* 86 F.R.D. 357, 365 n. 5 (E.D.Pa.1980). *See also Wolgin v. Magic Marker Corp.,* 82 F.R.D. 168, 170–71 (E.D.Pa. 1979).

ture. Thus, whether or not Defendants in this case did engage in a common scheme to conceal the true status of certain loans is a matter of proof to be resolved at a later time. "A potential class representative is not required to carry a civil burden of proof in the preliminary stages such as a class certification," *Piel v. National Semiconductor Corp., supra* at 368.

■ We believe that there are common questions sufficient to satisfy Fed.R.Civ.P. 23(a)(2), regardless of which approach is used: the theory of "similar misrepresentations and nondisclosures" or that of a "common scheme of deception." For example, there is a question as to whether Defendants made similar or identical misrepresentations or nondisclosures concerning the condition of certain loans so as to mislead with respect to their true status. Further, there is a question as to whether Defendants engaged in a common scheme, through totally different and unrelated misrepresentations and nondisclosures, to inflate the market price of Equimark common stock artificially. An affirmative answer to either question may support an action under Sec. 10(b) and Rule 10b–5.

### 3. Typicality

The typicality requirement of Rule 23(a)(3) has often been analogized to the requirement of Rule 23(a)(4) that the potential representative adequately represent the class. "Both requirements are intended to insure that plaintiff will present the claims of class members." *Piel v. National Semiconductor Corp., supra* at 370, quoting *Cohen v. Uniroyal, Inc., supra* at 691. Thus, the Court's focus here is "whether the overall scenario is sufficiently similar or 'typical' to ensure that the plaintiff will represent the claims of the class during the course of

this litigation." *Piel v. National Semiconductor Corp., supra* at 371.

■ The philosophy expressed by many courts is that the class representative's claims are typical when the "essence" of the allegations concerning liability, and not the particulars, are sufficiently similar to those of the other class members. *Id.* The claims do *not* have to be identical. *Cohen v. Uniroyal, Inc., supra* at 691. Further, dissimilarities in the facts surrounding the class members will not preclude a finding of typicality. *Id.* at 692.

The court in *Simon v. Westinghouse Electric Corp., supra,* found that although each purchaser in that case was not identically situated, all purchasers during the class period shared a common interest in showing that the price of stock was unlawfully inflated. The court determined that at least to that extent, the claims of the potential class representatives were typical of those of the other class members. *Id.* at 484. *See also Wolgin v. Magic Marker Corp., supra* at 172.

The *Simon* court noted that conflicts between class members in securities fraud cases are almost inevitable where a prolonged class period is involved. Such conflicts, however, are rejected by the courts as grounds for denying class certification. *Simon v. Westinghouse Electric Corp., supra* at 484. *See also Piel v. National Semiconductor Corp., supra* at 371.

■ We agree with the reasoning of the courts above. Thus, the claims of the Plaintiffs in the instant case are similar if not identical to those of the other class members in major respects. All will seek to show that they purchased Equimark stock at artificially-inflated prices. This alone is sufficient,[13] yet other claims may also be

---

**13.** Defendants contend that Plaintiff Steiner's claims are atypical because she was a "frequent" trader. We find this contention to be without merit. Thus, Steiner is as interested as the other class members in showing that she purchased the stock at artificially-inflated prices. Differences in the numbers and sizes of her purchases vis a vis other class members will go to the amount of her damages. Dam-

ages is an individual issue present in every securities fraud case and is not considered a bar to class certification. *Blackie v. Barrack,* 524 F.2d 891, 905 (9th Cir.1975), *cert. denied,* 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976). *See also Simon v. Westinghouse Electric Corp., supra* at 486.

For the same reason, Steiner's reliance on her father's advice does not render her claim

considered typical. For example, all class members will be interested in showing that Defendants made material misrepresentations and omissions with regard to the condition of certain loans.

Differences which later arise among class members will relate primarily to damages. Moreover, any differences which do arise, whether related to damages or not, may be handled by a variety of means, including the creation of subclasses. *See* Fed.R.Civ.P. 23(c)(1) and (4).[14]

### 4. Adequacy of Representation

The United States Court of Appeals for the Third Circuit, in *Wetzel v. Liberty Mut. Ins. Co.,* 508 F.2d 239 (3d Cir.), *cert. denied,* 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975), described the two factors which must be satisfied under the Rule 23(a)(4) requirement of adequate representation:

(a) the plaintiff's attorney must be qualified, experienced and generally able to conduct the proposed litigation, and (b) the plaintiff must not have interests antagonistic to those of the class.

*Id.* at 247.

Defendants do not dispute the ability of Plaintiffs' counsel to conduct the litigation at bar. In this regard, we note that counsel for Plaintiffs are qualified and experienced in securities litigation. We are confident that, as already demonstrated to date, counsel will proceed vigorously on behalf of the named Plaintiffs as well as on behalf of the other members of the class.

The thrust of Defendants' arguments attack the second factor articulated in *Wetzel.* Specifically, Defendants contend that antagonisms between the named Plaintiffs and the other class members, and even among the Plaintiffs themselves, are cer-

tain to develop because each Plaintiff will only be motivated to prove that Defendants violated Sec. 10(b) and Rule 10b–5 in the period immediately prior to the date of his or her purchase.

We find Defendants' assertion to be without merit. The possibility that the Plaintiffs may emphasize those periods prior to their own purchases does not render their interests antagonistic to those of the other class members. Further, Plaintiffs have alleged a continuous course of fraudulent conduct. Indeed, Plaintiffs allege that the loans in question were faulty prior to the commencement of the class period and that the Defendants had or should have had knowledge of these facts.

As already mentioned, any divergence in the interests of the class members may be appropriately handled by this Court in a variety of ways. *See* n. 14 *infra.*

Moreover, differences in the interests of the class representatives and the other class members is not dispositive under Rule 23(a)(4). The key question is whether their interests are *antagonistic. Wetzel v. Liberty Mut. Ins. Co., supra* at 247. No antagonism has been shown here. *See Cohen v. Uniroyal, Inc., supra* at 691.

Defendants also controvert the financial abilities of Plaintiffs Ziegler and Brody to pursue this litigation as a class action.

All three named Plaintiffs have indicated their willingness to bear the expenses of this litigation. Their counsel have agreed to advance those expenses, subject to reimbursement. The Plaintiffs have demonstrated their awareness of the potential costs to them should the class action be unsuccessful. Further, Plaintiffs Steiner

---

atypical. Many shareholders may have relied on the advice of others when making their purchases. They will be equally interested, however, in showing that the value of the stock was artificially inflated.

**14.** Fed.R.Civ.P. 23(c)(1) provides:

(1) As soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained. An order under this subdivision may be conditional,

and may be altered or amended before the decision on the merits.

Fed.R.Civ.P. 23(c)(4) provides:

(4) When appropriate (A) an action may be brought or maintained as a class action with respect to particular issues, or (B) a class may be divided into subclasses and each subclass treated as a class, and the provisions of this rule shall then be construed and applied accordingly.

and Ziegler have shown more than adequate resources for the purposes of this litigation. While Plaintiff Brody apparently has fewer resources at his disposal, it cannot be said that his financial status will impair the representation afforded to other members of the class, particularly when Plaintiff Steiner has clearly indicated her willingness and ability to bear the costs and expenses of the class action. More than this cannot be required. *See Wolgin v. Magic Marker Corp., supra* at 172.

Defendants offer several other reasons as to why Plaintiffs are inadequate representatives of the proposed class. None of these reasons, however, are relevant to the factors enunciated by the Court in *Wetzel.* We note in this regard that the Third Circuit recently reiterated its belief that the requirements in *Wetzel* are sufficient to insure adequate representation. The Court specifically declined to require anything further. *Lewis v. Curtis,* 671 F.2d 779, 789 (3d Cir.1982) (U.S.App.Pndg).[15]

### B. Requirements of Rule 23(b)

As previously stated, at least one of the subsections of Rule 23(b) must be satisfied in order to certify a class. *Katz v. Carte Blanche Corp., supra* at 756. Plaintiffs in this case are specifically moving for certification under Rule 23(b)(3).

Rule 23(b)(3) requires in pertinent part: . . . that the questions of law or fact common to the members of the class predomi-

nate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

#### 1. Predominance

Defendants essentially argue that fluctuations in the facts underlying this case preclude the issues common to the class from predominating over the individual issues. Defendants rely heavily on *Gelman v. Westinghouse Electric Corp.,* 73 F.R.D. 60 (W.D. Pa.1976), *appeal dismissed,* 556 F.2d 699 (3d Cir.1977), *aff'd per curiam by an equally divided court,* 612 F.2d 799 (3d Cir.1979), in support of their argument.

Plaintiffs emphasize that they allege a continuous course of conduct in this case. They essentially argue that any factual differences among members of the class are secondary to the central factual and legal issues uniting the class. Plaintiffs further argue that *Gelman* is not applicable to the instant case or, if it is, this Court should decline to follow it.

Rule 23(b)(3) requires predominance, not identity, of issues among members of the class. *Cohen v. Uniroyal, Inc., supra* at 695.

"Courts generally focus on the liability issue in deciding whether the predominance requirement is met, and if the liability issue is common to the class, com-

---

**15.** Assuming *arguendo* that Defendants' assertions are relevant to the *Wetzel* factors, they are unpersuasive.

Defendants contend that Plaintiff Brody is an inadequate representative because he purchased subsequent to the news release of July 21, 1981. That news release announced a proposed financing arrangement between Equimark and Chase Manhattan Corporation and also announced losses for the second quarter of 1981. According to Defendants, this specific disclosure will constitute a defense to the claims of those who purchased after that date, such as Brody, but not to the claims of earlier purchasers.

The question of whether the July 21, 1981 news release is materially misleading is a matter of proof to be resolved at a later time. Thus, if it is later determined for example, that full disclosure was made as of July 21, 1981, all

purchasers after this date, including Brody, would be unable to recover. This possibility does not render Plaintiff Brody an inadequate representative at this time.

Further, this Court is mindful of its authority to create subclasses or to amend the certification otherwise if it later becomes appropriate. *See* n. 14 *infra.*

Defendants also maintain that Plaintiff Steiner's reliance on her father's advice renders her an inadequate representative. We disagree. Steiner's reliance on her father does not make her an inadequate representative just as it did not make her claims atypical. *See* n. 12 *infra. See also Surowitz v. Hilton Hotels Corp.,* 383 U.S. 363, 368, 86 S.Ct. 845, 848, 15 L.Ed.2d 807 (1966) (where the Plaintiff, Mrs Surowitz, relied totally upon the advice of her son-in-law who in fact, purchased the stock for her, using her money).

mon questions are held to predominate over individual questions." *Dura-Bilt v. Chase Manhattan Corp.,* 89 F.R.D. 87, 93 (S.D.N.Y. 1981).

■ Fluctuations in the facts underlying the class period do not defeat a class certification motion. *Cohen v. Uniroyal, Inc., supra* at 691.

■ We believe in the instant case that the liability issue is common to the class and in fact predominates over any issues which pertain only to individual class members. In this regard, the central issue uniting the class members is whether Defendants engaged in a common scheme to inflate the value or to maintain an inflated value of Equimark common stock. *See Simon v. Westinghouse Electric Corp., supra* at 486. Another central issue pertaining to all class members is whether Defendants intentionally concealed the true condition of certain loans.

Defendants' assertion with regard to fluctuations in the facts ignores Plaintiffs' allegation that the loans were in precarious condition *prior* to the commencement of the class period. Thus, while the loans did continue to deteriorate throughout the relevant time period, Defendants allegedly knew at the outset that the loans were faulty yet, according to Plaintiffs, deliberately concealed the condition of the loans in Equimark's reports and financial statements.

■ Further, the fact that members of the class may not have had the same information available to them because of the various documents issued by Defendants at different times and because of changes in the state of the economy during that period, does not preclude class certification. Where, as here, Plaintiffs' allegations relate to a common course of conduct, common

issues predominate over any individual issues which may be raised by the varying amounts of information available. *Dura-Bilt Corp. v. Chase Manhattan Corp., supra* at 96.

■ We note here that Plaintiffs do not have to prove individual reliance in a "nondisclosure" case such as the one at bar. Plaintiffs only have to show that the facts allegedly withheld by Defendants were material in the sense that a reasonable investor might have considered them important when making the investment decision. *Affiliated Ute Citizens v. United States,* 406 U.S. 128, 153, 92 S.Ct. 1456, 1472, 31 L.Ed.2d 741 (1972). Since materiality is based upon an objective standard, it is not generally considered an individual issue. *Cohen v. Uniroyal, Inc., supra* at 694.[16]

We believe that *Gelman,* cited extensively by Defendants, is distinguishable from the case before us. In *Gelman,* the Plaintiffs' principal allegation was that Defendant Westinghouse Electric Corporation failed to disclose a contingency, namely, the possible divestiture of a division which was losing money. 73 F.R.D. at 68.

In the instant case, the loans in question were allegedly faulty prior to any purchases by the class members. Further, the condition of the loans is not alleged to have "fluctuated among various stages of development and uncertainty." *Id.* The fact that the loans deteriorated further during the class period does not alter this conclusion. Simply put, Plaintiffs allege that the stability of the loans was seriously in jeopardy at the outset of the class period and continued a steady decline throughout.

Individual issues arise in all class actions,[17] particularly one of this magnitude and where a unitary scheme or course of

---

**16.** This Court will consider the use of subclasses if it later appears that materiality is not an issue common to all members of the class. *See* n. 14 *infra.*

**17.** For example, while damages are an individual issue, they do not constitute a bar to class certification. *Piel v. National Semiconductor Corp., supra* at 373; *Simon v. Westinghouse Electric Corp. supra* at 486. Even in this area,

there may be some common ground. For example, the *computation* of damages may be uniform with variations only in the *amounts* of the awards. Thus, it is possible that computation may be purely a mechanical task using a certain polestar. If mechanical computation is not possible, the Court may consider having individual trials on the damages issue. *See Piel v. National Semiconductor Corp., supra* at 373.

conduct is the common question. To allow various secondary issues to preclude the certification of a class would render Rule 23 "an impotent tool for the private enforcement of the federal securities laws." *Piel v. National Semiconductor Corp., supra* at 373. This Court does not believe that the individual issues present in this case warrant the denial of class certification, especially given the general judicial preference for the class action "device" in these types of cases.

### 2. Superiority

Rule 23(b)(3) requires that a class action be superior to other methods for the fair and efficient adjudication of the controversy.

The claims of individual investors are often too small to warrant separate lawsuits. It is also realistic to expect that few individual class members will have the inclination or the money to maintain a lawsuit of this complexity. *See Simon v. Westinghouse Electric Corp., supra* at 487. Therefore, without the class action device, many meritorious claims would go unredressed. Even if many individual suits were brought, the courts' dockets would be unnecessarily overburdened with similar or identical claims. *See Piel v. National Semiconductor Corp., supra* at 374.

Since lack of redress and repetitive litigation are both unsatisfactory alternatives, we must conclude that a class action in this case is superior.[18]

\* \* \*

### III. THE CLASS PERIOD

Plaintiffs propose that the class period run from February 1979 to September 29, 1981. They do not propose a specific date for the commencement of the class period but at oral argument, Plaintiffs' counsel indicated that the class period begins with the issuance of Equimark's Annual Report.

---

**18.** Manageability may prove to be a problem as the litigation develops. At this point, however, we can only speculate as to such problems. Any present concerns in this regard are therefore not grounds to deny class certification. Even if managerial difficulties do arise, the use of subclasses may alleviate the problems. *See*

*See* Transcript of Oral Argument on September 13, 1982 at 68.

Counsel was presumably referring to Equimark's Annual Report for 1978. That Annual Report was issued on or about February 7, 1979. *See* Appendix 3 to the Affidavit of Robert F. Kastelic, Exhibit "T." Therefore, the class period should commence on February 7, 1979.

Plaintiffs' Consolidated Amended Complaint, however, does not refer to the 1978 Annual Report. Indeed, the first document alleged by Plaintiffs to be misleading is the Annual Report for 1979, issued on February 7, 1980.

Therefore, Plaintiffs will be granted the opportunity to amend their Complaint to include the document(s) which allegedly signal the beginning of the class period.

If Plaintiffs fail to amend their Complaint by the date specified in the attached Order, the Class will automatically be certified to include only those persons who purchased as of the issuance date of the first document currently specified in the Complaint, namely, February 7, 1980. In that event, Plaintiff Ziegler, who purchased stock in October 1979, would be unable to represent the Class. *See Bailey v. Patterson*, 369 U.S. 31, 32–33, 82 S.Ct. 549, 550–51, 7 L.Ed.2d 512 (1962). She could, however, continue to press her claim on her own behalf.

Providing Plaintiffs do amend their Complaint by the specified date, the class, with the three named Plaintiffs as its representatives, will automatically be certified to include:

All persons, other than Defendants, who purchased shares of Equimark common stock during the period February 7, 1979 to September 29, 1981.

\* \* \*

*Samuel v. University of Pittsburgh,* 538 F.2d 991, 996 (3d Cir.1976). Decertification may also be used as a last resort. *See Link v. Mercedes-Benz of No. America, Inc.,* 550 F.2d 860, 864 (3d Cir.), *cert. denied,* 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977).

## IV. CLASS NOTICE

Fed.R.Civ.P. 23(c)(2) provides:

In any class action maintained under subdivision (b)(3), the court shall direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice shall advise each member that (A) the court will exclude him from the class if he so requests by a specified date; (B) the judgment, whether favorable or not, will include all members who do not request exclusion; and (C) any member who does not request exclusion may, if he desires, enter an appearance through his counsel.

██ In the present case, the names and addresses of the class members are ascertainable from Equimark's records. Therefore, individual notice [19] is clearly the "best notice practicable" within the meaning of Rule 23(c)(2). *See Eisen v. Carlisle & Jacquelin, supra,* 417 U.S. at 175, 94 S.Ct. at 2151. Costs of such notice must be borne by Plaintiffs. *Id.*

\* \* \*

Accordingly, the Plaintiffs' Motion for Class Certification is granted.

### ORDER

AND NOW, this 27th day of January, 1983, Plaintiffs' Motion for Class Certification is hereby GRANTED.

Plaintiffs shall be given until February 17, 1983 to amend their Complaint in a manner consistent with the foregoing Opinion.

Providing the Plaintiffs' Complaint is amended in accordance with the above, the class will automatically be certified on February 18, 1983 as follows:

All persons, other than Defendants, who purchased shares of Equimark common stock during the period February 7, 1979 to September 29, 1981.

The three named Plaintiffs shall be representatives of the class.

---

If Plaintiffs fail to amend their Complaint in accordance with the above, the class will automatically be certified on February 18, 1983 as follows:

All persons, other than Defendants, who purchased shares of Equimark common stock during the period February 7, 1980 to September 29, 1981.

In the event Plaintiffs fail to amend their Complaint, Plaintiff Ziegler will not be a class representative, but can continue to maintain her claim on her own behalf.

It is further ORDERED that Plaintiffs shall submit a proposed form of notice by February 17, 1983. Plaintiffs shall also submit to the Court by that date, a proposed date for the close of discovery, informing the Court as to their needs and expectations with respect to discovery on the merits.

Defendants shall submit any objections or suggested modifications to Plaintiffs' proposed notice by February 25, 1983. As well, Defendants by that date should inform the Court as to their discovery needs and expectations and should also submit a proposed discovery deadline.

---

**19.** Individual notice can be given by a first class mailing. *See Piel v. National Semicon-* *ductor Corp., supra* at 375.