**Bradley GAVRON**

v.

**BLINDER ROBINSON & CO., INC.**

v.

**Brian Emmett McCARTY.**

**Civ. A. No. 86–5006.**

United States District Court, E.D. Pennsylvania.

April 16, 1987.

---

Michael R. Lastowski, Saul, Ewing, Remick & Saul, Philadelphia, Pa., for plaintiffs.

Alan C. Jacobsen, Walter Weir, Jr., Kleher, Harrison, Harvey, Branzburg, Ellers & Weir, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

KATZ, District Judge.

The named plaintiff in this case, Bradley Gavron, has moved, pursuant to Rules 23(c) and 23(b)(3) of the Federal Rules of Civil Procedure, that this action be maintained as a Class Action. The class that plaintiff proposes would include "all persons who owned shares of common stock of Stansbury Mining Corporation ("Stansbury") on June 9, 1986, and who, during the period from June 9, 1986, through the present (the "Class Period"), sold shares of Stansbury common stock (the "Class");" and exclude "defendant Blinder, Robinson & Co., Inc. ("Blinder"), their officers, directors and employees, and the members of the immediate family of and persons affiliated with each of Blinder's officers, directors and employees." Plaintiff's Motion for Class Action at 2.

## I. BACKGROUND

On August 22, 1986, Gavron filed a Complaint against Blinder, asserting that Blinder engaged in a scheme to manipulate the price of stock of Stansbury Mining Corporation ("Stansbury"). Stansbury is a Utah corporation which owns a vermiculite mine in Montana; Stanbury's common stock has traded on the NASDAQ over-the-counter market since May 8, 1985. Affidavit of Stephen P. Yeoman. From January 2, 1986, to June 6, 1986, the price of Stansbury common stock rose from a price of one and one-sixteenth (1¹/₁₆) per share to four and one-quarter (4¼) per share. NASD Monthly Reports for January—June 1986.

Gavron, the representative plaintiff in this case, purchased Stansbury common stock through Blinder in several transactions between October 17, 1985 and June 3, 1986. Gavron Deposition, at 76–77, 84, 88, 94. Plaintiff held 765 shares of this stock at the beginning of June 1986. *Id.* at 90 and Exh. 6 thereto. On June 3, 1986, plaintiff ordered an additional 3,500 shares. *Id.* at 93–94. Blinder, after initially refusing the order, confirmed it on June 9, 1986, at the price prevailing on June 3. *Id.* at 94, 99–100. On June 27, 1987, Gavron sold 965 shares of Stansbury at a price of two and seven-sixteenths (2⁷/₁₆) per share. *Id.* at 98–99, 100, 114. On July 18, 1986, he sold his remaining 3,300 shares at a price of two and three-sixteenths (2³/₁₆) per share. *Id.* at 114 and Exh. 8a thereto.

Gavron alleges the following: that Blinder, in an effort to depress the price of Stansbury, made misrepresentations about Stansbury to Blinder's customers,[1] which caused these customers to sell Stansbury, *id.* ¶ 16; that Blinder implemented a policy of refusing to solicit orders from customers to purchase Stansbury stock; that the alleged misrepresentations and this non-solicitation policy, given the defendant's leading position as a broker of publicly traded stock, caused a dramatic drop in the price of Stansbury in June, 1986. Gavron also claims that Blinder's continued policy of not accepting orders for purchases of Stansbury caused the price of the stock to remain depressed.

Gavron's complaint alleges that, at some time prior to June 1986, Blinder, believing that the price of Stansbury common stock would soon decline, began to accept orders from customers for the purchase of the stock, without making such purchases contemporaneously for the customers. Complaint ¶ 11. Plaintiff contends that Blinder intended to generate profits by having its customers pay the market price prevailing at the time the customers placed their orders for Stansbury stock, and by later making the actual purchases for the customers at a decreased market price.

Plaintiff's complaint institutes causes of action based upon: violation of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j; and Rule 10(b)–5, 17 C.F.R. § 240.10b–5; violation of Section 501 of the Pennsylvania Securities Act, 70 P.S. § 1–501,[2] Complaint ¶ 28; and by common law fraud. Complaint ¶'s 23–26.[3]

Blinder contends, and Gavron does not deny, that, throughout the period of Gavron's investment in Stansbury, Gavron took an active interest in his investment, by frequently communicating with his broker

---

1. These alleged misrepresentations include: representing to its customers, directly and indirectly, that Stansbury was bankrupt and insolvent, had virtually no assets, and failed to comply with certain states' Blue Sky laws in issuing its common stock. Complaint ¶ 13.

2. While the complaint does not specify under which subsection of this Act this count is under, plaintiff's reply memorandum in support of his certification motion, submits and I find, that the operative facts he has pleaded fall within the scope of Section 1–501(c), which unlike subsection (b), is not limited to claims brought against purchasers or sellers. This finding supports permitting plaintiff leave to amend his complaint. F.R.Civ.P. 15(a).

3. Regarding plaintiff's Count II, plaintiff concedes that since the NASDAQ over-the-counter market is not considered to be a "national securities exchange" within the meaning of Section 9 of the Exchange Act, 15 U.S.C. § 78i; he has failed to state a claim based on this statute, thus that claim will be dismissed.

at Blinder and with others concerning Stansbury[4], by contacting the president of Stansbury[5], and by reviewing Stansbury's financial statements.[6] Blinder points out that when Gavron discovered the allegation that Blinder was making false statements concerning Stansbury[7], both Blinder and his broker learned of the falsity of the allegedly disseminated information through contacting the president of Stansbury[8].

## II. CLASS ACTION CERTIFICATION

■ Under Fed.R.Civ.P. 23(a), a plaintiff may sue on behalf of a class only if:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

In addition to satisfying each of the requirements set out in Rule 23(a), the proposed class must meet one of the three standards set out in Rule 23(b). The plaintiff in this action seeks certification under Rule 23(b)(3) which provides for class action status when:

> the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

The burden is on the party seeking to utilize the class action form to prove that the requirements of Rules 23(a) and 23(b) are met. *Davis v. Romney*, 490 F.2d 1360, 1366 (3d Cir.1974); *Glick v. E.F. Hutton*, 106 F.R.D. 446, 447 (E.D.Pa.1985); 3B J. Moore & J. Kennedy, Moore's Federal Practice ¶ 23.02 (2d Ed.1985).

■ However, the Court has noted: "Class actions are a particularly appropriate and desirable means to resolve claims based on the securities laws, 'since the effectiveness of the securities laws may depend in large measure on the application of the class action device.' ... '[T]he interests of justice require that in a doubtful case ... any error, if there is to be one, should be committed in favor of allowing a class action.' " *Eisenberg v. Gagnon,* 766 F.2d 770, 785 (3d Cir.) *cert denied sub nom. Wasserstrom v. Eisenberg,* —— U.S. ——, 106 S.Ct. 342, 88 L.Ed.2d 290 (1985), (citations omitted). In addition, at the Rule 23 motion stage, the requirements of the rule itself, not the merits of the case, are at issue. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 178, 94 S.Ct. 2140, 2152, 40 L.Ed.2d 732 (1974); *Rischcoff v. Commodity Fluctuations Systems, Inc.,* 111 F.R.D. 381, 382 (E.D.Pa.1986). I will first discuss class certification with respect to Counts I and IV, based on Federal and State securities law, respectively.

### A. *Numerosity*

■ I find that plaintiff's allegations meet the numerosity requirement of Fed.R. Civ.P. 23(a)(1). This rule requires that the class be "so numerous that joinder of all members is impracticable." The proposed Class is identified as all persons who owned shares of Stansbury common stock on June 9, 1986, and who sold shares of Stansbury stock during the period from June 9, 1986, through the present. Although the precise number of the class is not determinable at this time, plaintiff has submitted information regarding stock transfers during the class period which enables me to make a common-sense, indirect estimate of class size. *See Peil v. Speiser,* 97 F.R.D. 657, 658 (E.D.Pa.1983) (quoting *Wolgin v. Magic Marker Corp.,* 82 F.R.D. 168, 171 (E.D.

---

**4.** Deposition of Bradley Gavron, dated October 18, 1986, at 27: 22–24, 30:1–3, 35:7–8, 54:18–55; 16, 59:7–61:11, 77:23–80–22, 86:13–14, 99:8–101:9 (hereinafter cited as "Gavron Depositions").

**5.** *Id.* at 38:18–39: 7, 80:23—81:15, 82:22—83:3, 110:18—111:11.

**6.** *Id.* at 43:10–47:24, 48:22–49:20.

**7.** *Id.* at 30:19–31:6.

**8.** *Id.* at 36:12–24, 110:18–20.

Pa.1979)) (federal courts in securities actions accept common sense assumptions to support numerosity finding).

Plaintiff has presented portions of Certified Monthly Statistical Reports from the National Association of Securities Dealers (NASD) showing that throughout the class period at least 6,480,343 shares of Stansbury common stock were outstanding and publicly traded; and that approximately 9.9 million shares of Stansbury common stock were traded in 4265 separate transactions between June 9, 1986, and December 31, 1986, with 1428 of these transactions occurring in the period from June 9 through June 30, 1986. NASD Monthly Reports for June—December, 1986. Plaintiff also submitted an affidavit from the Chief Financial Officer of Stansbury, stating that there were 3278 record holders of publicly traded Stansbury common stock as of October 6, 1986. Affidavit of Stephen P. Yeoman. Taken together, the volume of shares traded and the number of separate transactions certainly suggest that the proposed class satisfies the numerosity requirement.

Defendants do not dispute that the Class, as defined by plaintiff, is so numerous that the joinder of all members would be impracticable. Defendants argue, however, that Gavron cannot claim that a class consisting of all persons who traded in Stansbury common stock during the relevant period is appropriate in this action because of the insufficiency of the plaintiff's fraud-on-the-market claim. Specifically, Blinder argues that "even assuming arguendo that Blinder has made these alleged misstatements to everyone of its customers who sold Stansbury during the relevant time period, in the absence of any public statements, the volume of selling that Blinder's customers generated would simply be insufficient to affect the price of Stansbury stock." Memorandum In Opposition To Class Action Motion at 7.

These arguments do not address the Rule 23(a) numerosity requirement; instead, they address the merits of plaintiff's cause of action. It is not necessary to inquire into the sufficiency of the complaint with respect to plaintiff's fraud-on-the-market theory to resolve the numerosity issue [9]. *See Eisen v. Carlisle & Jacquelin,* 417 U.S. at 178, 94 S.Ct. at 2152; *Kahan v. Rosentiel,* 424 F.2d 161, 169 (3d Cir.1970) (the determination of proper class does not depend on existence of cause of action).

### B. *Common Questions*

█ The second prerequisite is that there be questions of law or fact common to the class. This prerequisite is satisified if the plaintiff can show the existence of a " 'common nucleas of operative facts;' " *Cohen v. Uniroyal, Inc.,* 77 F.R.D. 685, 690 (E.D.Pa.1977), quoting *Entin v. Barg,* 60 F.R.D. 108, 113 (E.D.Pa.1973), or if plaintiff can show the existence of common questions of law, *In re Glassine & Greaseproof Paper Antitrust,* 88 F.R.D. 302, 304 (E.D.Pa.1980). Defendant does not dispute plaintiff's claim that there are questions of law or fact common to the class. Such questions clearly exist in the issues of whether Blinder violated federal securities laws, accepted orders from customers for the purchase of Stansbury stock without contemporaneously making purchases for its customers, and, among others, whether Blinder's alleged illegal acts directly or indirectly caused the price of Stansbury stock to become artifically deflated.

### C. *Typicality*

█ Rule 23(a)(3) mandates that the claims of the representative be typical of those of the entire class. The typicality question asks whether "the named plaintiff's individual circumstances are markedly different or ... the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based." *Eisenberg v. Gagnon,* 766 F.2d 770, 786 (3d Cir.1985). This requirement is often equat-

**9.** Contrary to Blinder's assertion, I find that whether or not the scheme that Gavron created could have affected the price of Stansbury stock, is an inquiry into the merits of plaintiff's case.

ed with the requirement of Rule 23(a)(4) that the proposed class representative adequately represent the class. *Cohen v. Uniroyal,* 77 F.R.D. 685, 691 (E.D.Pa.1977). The purpose of the requirement is to assure that plaintiff's interests are not adverse to that of other class members. *Id.*

■ Defendant contends that certain factual differences between the plaintiff and the proposed class render the plaintiff an atypical and inadequate representative. Blinder claims that since Gavron actually relied upon Blinder's alleged material misstatements in selling his Stansbury stock shares, he is not a typical representative for a fraud-on-the-market claim.[10] To prevail on a fraud-on-the-market claim, plaintiff does not have to prove reliance on Blinder's misleading statements in selling his stock at depressed prices. Blinder's claims are alleged to be atypical of claims of investors who did not personally rely on the mispresentations. Blinder asserts that plaintiff has a potential individual claim based on oral misrepresentations made directly to him, and that he therefore will be tempted to concentrate on proving this potential claim to the exclusion of the fraud-on-the-market claim he shares with the rest of the class.

Plaintiff argues that his additional potential claim based on alleged direct misrepresentations poses no threat that his prosecution of this class action will be "antagonistic" to class interests in a fraud-on-the-market claim, because

> plaintiffs who purchase in an open and developed market need not prove direct reliance on defendants' misrepresentations, but can satisfy their burden of proof on the element of causation by showing that the defendants made material representations.

*Peil v. Speiser,* 806 F.2d 1154, 1161 (3d Cir.1986) Thus, plaintiff claims, defendant's

assumption that "the burden of establishing the misrepresentation claim is less onerous than the burden of showing the existence of a wide-ranging complicated fraud-on-the-market," Defendant's Memorandum of Law, at 9, is no longer viable. *See T.J. Raney & Sons v. Fort Cobb, Oklahoma Irrigation Fuel Authority,* 717 F.2d 1330, 1331–33 (10th Cir.1983) (affirming class action certification where class representative could have recovered under either direct misrepresentation theory or fraud-on-the-market theory.)

■ Plaintiff notes as well that, should it later appear that plaintiff cannot adequately represent the class, this Court has broad discretion to order appropriate subclasses or other remedial action to protect class members' rights. *See, e.g., Steiner v. Equimark Corp.,* 96 F.R.D. 603, 610 (W.D. Pa.1983) (court may handle divergence in class members' interests in a variety of ways under Rule 23(c)(4)); *Rishcoff v. Commodity Fluctuations Systems, Inc.,* 111 F.R.D. 381, 385 (E.D.Pa.1986).[11] I am not at this time persuaded by defendant's contention that plaintiff's additional potential claim based on alleged direct misrepresentations poses a real threat to his adequately representing the class interests. Rule 23(c)(4) offers me the flexibility in the future to handle divergence in class members' interests, should that become necessary.

Blinder also argues that Gavron's claims are not typical because he is subject to a unique defense. Gavron, according to Blinder, will be, unlike everyone else in the purported class, subject to the defense to the fraud-on-the-market claim, that he knew of the falsity of Blinder's alleged misrepresentations.

While it is clear that non-reliance upon the integrity of the market is an affirma-

---

**10.** Defendant, however, also asserts that Gavron learned of the *falsity* of the alleged misrepresentations by communicating with Blinder's representatives and Stansbury offices.

**11.** As an additional alternative, plaintiff has indicated his intention to amend the complaint to

join as additional class representatives investors who purchased Stansbury stock without having any contact with Blinder and who therefore would have no possible direct misrepresentation claim. Plaintiff's Reply Memorandum In Support of Class Action Motion at 11, n. 5.

tive defense to a fraud-on-the-market theory claim, *see Peil v. Speiser*, 806 F.2d at 1161, it is also clear that defendants' claim of non-reliance is insufficient to deny a class action certification. *See Fickinger v. C.I. Planning Corp.*, 103 F.R.D. 529 (E.D. Pa.1984) (defendant's claim that plaintiff is subject to a unique reliance defense does not preclude certification); *cf. Eisenberg v. Gagnon*, 766 F.2d 770, 786 (abuse of discretion for district court to deny class certification on grounds of existence of individual issues as to reliance); *Rischcoff*, 111 F.R.D. at 382. Inquiry into a claimed affirmative defense impermissibly permits an issue that goes to the merits of the litigation to intrude upon the class certification analysis. *See, Fickinger, supra*, and cases cited therein.[12] I thus find plaintiff to be a typical plaintiff for purposes of class certification at this time.

### D. *Fair and Adequate Protection of Class Interests*

■ Standards for Rule 23(a)(4)'s requirement that plaintiff fairly and adequately protect class interests are met if it appears that (1) the named plaintiff's interests are not antagonistic to those of other members of the Class, and (2) plaintiff's attorneys are qualified, experienced, and generally able to conduct the litigation. *Lewis v. Curtis*, 671 F.2d 779, 788 (3d Cir.), *cert. denied*, 459 U.S. 880, 103 S.Ct. 176, 74 L.Ed.2d 144 (1982). The typicality discussion above demonstrates that plaintiff's interests are not antagonistic to other class member's interests. It is in the interest of both the Class and the plaintiff to prove that Blinder injured them by violating federal and state security laws, in conducting its business.

Plaintiff also satisfies the second Rule 23(a)(4) requirement; the attorneys he has retained are qualified and experienced. *See, e.g., In re A.M. International, Inc. v. Securities Litigation*, 108 F.R.D. 190, 194 n. 6 (S.D.N.Y.1985) (recognizing plaintiff's

attorneys as "well qualified" to handle complex securities fraud litigation on behalf of plaintiff class).

### E. *Rule 23(b) Conditions*

Plaintiff has moved for certification under Rule 23(b)(3). Under this section, the prerequisites of subdivision (2) must be satisfied, and the court must find:

> that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. F.R.C.P. 23(b)(3).

### 1. *Predominance of Common Questions of Law or Fact*

■ I find that common questions of law or fact predominate in this case. It is not essential that such questions be identical among members, only predominate. *Cohen v. Uniroyal*, 77 F.R.D. 685, 695 (E.D. Pa.1977). Here, if each class member were to bring an individual action, each would have to develop proof of the existence of the same conduct by Blinder in order to prove liability; thus, the issues of whether defendant Blinder engaged in a scheme or course of conduct, or made a series of misrepresentations and material omissions, that deflated the market price of Stansbury stock, and whether defendant Blinder acted with a state of mind that establishes liability, unite class members. These liability issues are central to the predominance question. *Steiner v. Equimark Corp.*, 96 F.R.D. 603, 611–12 (W.D.Pa.1983).

■ In the typicality section, I discussed the presumption of reliance in fraud-on-the-market cases. The presumption of reliance also arises whenever an action is based on material "nondisclosures," which plaintiff has pleaded in this case. *See Affiliated Ute v. United States*,

---

**12.** At this stage, it is but a speculative possibility that plaintiff will concentrate on overcoming the defense of non-reliance to an extent that it will detract from his efforts to prevail under the fraud-on-the-market theory. *See Peil v. Speiser*, 97 F.R.D. at 660. *See also, Wolgin v. Magic Market Corp.*, 82 F.R.D. at 173.

406 U.S. 128, 153, 92 S.Ct. 1456, 1472, 31 L.Ed.2d 741 (1972); *Peil v. National Semiconductor Corp.,* 86 F.R.D. 357, 373 (E.D. Pa.1980). As stated earlier, possible issues of individualized proof of reliance or individualized defenses of nonreliance that may be raised are subordinate to the core issues of liability in the fraud-on-the-market theory. *Peil v. Speiser,* 97 F.R.D. at 661–62; *Steiner v. Equimark Corp.,* 96 F.R.D. at 612–13.

Nor do individual questions of damages predominate so as to bar class treatment. *Bogosian v. Gulf Oil Corp.,* 561 F.2d 434, 455–56 (3d Cir.1977), *cert. denied,* 434 U.S. 1086, 98 S.Ct. 1280, 55 L.Ed.2d 791 (1978). Damages can be assessed after a liability determination. *Cohen,* 77 F.R.D. at 695.

### 2. *Superiority of Class Action*

At this stage, the unities of interest and issues in this securities litigation make the class action forum superior to other available methods for the fair and efficient adjudication of Counts I and IV of this controversy. As the Court said in *Cohen v. Uniroyal:*

> Without class action certification, Uniroyal's shareholders will have two options. One, the shareholders who believe they have suffered a loss may not seek redress because their individual losses may be too small to motivate them to institute individual actions. Or, two, the shareholders may clog court dockets with multiple and scattered suits. In either case, the result would be both unjust and inefficient; the goals of Rule 23, the achievement of "economies of time, effort, and expense," would clearly be defeated.

*Cohen,* 77 F.R.D. at 695.

### 3. *Common Law Fraud Claims*

██ Unlike his fraud-on-the-market, and Pennsylvania Securities Act claims, plaintiff's common law fraud claim in Count III is not suitable to be treated as a class action. Under a common law fraud claim, each plaintiff must demonstrate his

individual reliance upon the defendants' misstatements. Another Court has noted: "the common law fraud count raises numerous issues which are personal to each separate plaintiff and are, therefore, uncommon to the class as a whole." *Ungar v. Dunkin' Donuts of America,* 68 F.R.D. 65 (E.D.Pa.1975), *rev'd on other grounds,* 531 F.2d 1211 (3d Cir.), *cert denied,* 429 U.S. 823, 97 S.Ct. 74, 50 L.Ed.2d 84 (1976). Since individual, not common issues, predominate with respect to the plaintiff's common law fraud claims, I will not certify those claims for class determination. *See also Rosenberg v. Digilog, Inc.,* 648 F.Supp. 40, 43–44 (E.D.Pa.1985).

Therefore, this court will certify the plaintiff class for Counts I and IV of the Complaint but not for Court III.[13]

### ORDER

AND NOW, this 16th day of April, 1987, upon consideration of Blinder, Robinson & Co., Inc.'s Motion for Partial Judgment on the Pleadings, its Memorandum of Law in support thereof, and Bradley Gavron's response thereto, it is hereby

ORDERED that this motion is GRANTED with respect to Count II; judgment is entered dismissing Count II. The plaintiff has conceded that he has failed to state a claim in Count II of the Complaint. This motion is denied with respect to Count IV of the Complaint, the plaintiff having pleaded sufficient operative facts to give Blinder notice of his cause of action under Sections 1–501 and 1–402 of the Pennsylvania Securities Act, with leave to the plaintiff to amend within ten days.

### ORDER

AND NOW, this 16th day of April, 1987, it is hereby ordered that, pursuant to Rules 23(c) and 23(b)(3) of the Federal Rules of Civil Procedure, Counts I and IV are certified as class actions, for the class including all persons who owned shares of common stock of Stansbury Mining Corporation ("Stansbury") on June 9, 1986, and who,

---

**13.** Count II will be dismissed by agreement of the parties.

during the period from June 9, 1986, through the present (the "Class Period"), sold shares of Stansbury common stock (the "Class"); and excluding defendant Blinder, Robinson & Co., Inc. ("Blinder"), their officers, directors and employees, and the members of the immediate family of and persons affiliated with each of Blinder's officers, directors and employers.

I deny plaintiff's motion to certify for class action Count III of plaintiff's complaint.

Discovery shall be completed by July 15, 1987. Any amendments to the pleadings, joinder of additional parties or motions shall be undertaken and concluded, so as not to delay the completion of discovery by the specified date.

Plaintiff's pretrial memorandum under Local Rule 21(c) shall be filed within ten days of the end of the discovery period.

Defendants' pretrial memoranda under Local Rule 21(c) shall be filed within ten days after plaintiff's memorandum is due.

Parties in jury trials shall submit two copies of proposed points for charge, including authorities with precise page citations. Parties in nonjury trials shall submit two copies of proposed findings of fact and conclusions of law. Parties shall submit two copies of trial briefs covering legal issues likely to arise at trial. These papers shall be attached to the respective pretrial memoranda.

The case shall be placed in the trial pool on August 6, 1987, to be called for trial upon 24 hours telephone notice.